# CHARLESTON.

THE WEST VIRGINIA TIMBER CO. *v.* FERRELL *et al.*

Decided February 8, 1910.

1.    DETINUE—*Verdict—Sufficient—Description of Property.*
        If the verdict be for plaintiff in an action of detinue, the description of the property must be such as to make it capable of being identified.

2.    SAME.
        When the verdict is for plaintiff, and describes the property not otherwise than "the property described in his declaration," and the declaration sufficiently describes it, this will supply the lack of description in the verdict and render it valid.

3. SAME—*Parties—Joinder of Defendants.*

W. is the owner of certain personal property in the possession of F. who, claiming to own it, delivers it to P. and pledges it to him to secure a debt owing by F. to P.

*Held:* F. and P. may be sued jointly in detinue by W.

Error to Circuit Court, Logan County.

Action by the West Virginia Timber Company against John F. Ferrell and others. Judgment for defendants, and plaintiff brings error.

*Reversed and Rendered.*

*Ellison & England* and *Price, Smith, Spilman & Clay,* for plaintiff in error.

*Lilly & Shrewsbury* and *Marcum & Marcum,* for defendants in error.

WILLIAMS, JUDGE:

This is an action of detinue by The West Virginia Timber Company, a corporation, to recover possession of certain oak lumber manufactured by the defendant John F. Ferrell and hauled to the railroad at a place called Peck Station, in Logan county, and stacked upon land belonging to his co-defendant J. E. Peck, Sr. A trial by jury was had in the circuit court of Logan county on the 6th of August, 1908, and a verdict rendered in favor of plaintiff. On motion of defendants the court set aside the verdict and awarded a new trial. To this interlocutory order setting aside the verdict plaintiff has obtained a writ of error from this Court. A decision of the case involves the following questions: (1) has plaintiff established its right to the possession of the property; (2) does the verdict sufficiently describe the property; and (3) has it a right to maintain this action against the defendants jointly?

The plaintiff, being the owner of certain standing trees in Logan county which it had purchsed of U. B. Buskirk and others, and which had been conveyed to its president, entered into a written agreement with the defendant Ferrell and one Elbert Garrett, whereby they undertook to cut, log and manufacture the timber into lumber and to load it on board the cars at Chapmansville, after it became sufficiently dried for ship-

ment.. The contract gave said Ferrell and Garrett the right, subject to the approval of the Timber Company, to sell the lumber after it was manufactured. But it reserved to the Timber Company right to retain any, or all, of the lumber, provided it would pay as much for it as any other purchaser. It also provided that the lumber was to be shipped in the name of the West Virginia Timber Company and payment therefor made to it. The cost of the standing timber, together with expenses incurred in acquiring the same, was to be charged to Ferrell and Garrett with interest thereon at the rate of six per centum per annum until repaid. Repayment was to be made by crediting them with "one-third of the net proceeds of shipment of said timber F. O. B. cars Chapmansville until same is fully repaid."

The contract contains also the following provisions: "The sum of $1.00 per M feet for every thousand feet of timber cut and sold by said party of the first part (Ferrell and Garrett) from said timber, whether such sales be made to said West Virginia Timber Company, or to other parties, shall be deducted by said West Virginia Timber Company from the selling price of said timber or lumber, and shall be in payment for the employment and privileges hereby granted said first party by said West Virginia Timber Company. The price of all said lumber and timber sold received by said second party under this agreement, after deducting one-third net proceeds to apply on timber purchase price as stipulated above, and after deducting charge of $1.00 per M ft. shall be credited to said party of the first part and paid to them at their request, provided however, that if at any time it should appear to parties of the second part that said one-third net proceeds would not amount to as much as the cost of timber with interest either through the timber estimate falling short in amount expected or from any other cause at this time not foreseen, then said second parties shall have the privilege of reserving a larger proportion of said net proceeds for this purpose and applying same to cost of timber." The title to the timber is then expressly retained by the West Virginia Timber Company, and the contracts concludes with the following explanatory clause, viz: "The agreement being merely one whereby in consideration of the greater profit accruing to said parties of the first part they

agree to manufacture and load said lumber and timber on board cars."

Pursuant to the rights reserved to it in the above described contract, the plaintiff, by a written contract dated the 20th of January, 1906, agreed to take the following grades of lumber, to-wit: plain white oak boards, one inch in thickness, which was to be stacked on sticks for a sufficient length of time to be well seasoned and dried, and then to be loaded on board the cars at Chapmansville, for which it was to pay the following prices: for grades known as first and seconds $32.00, for commons $22.00, and for shipping culls $14.00 per M feet. The lumber was to be inspected by the plaintiff according to National Hardwood Rules. Three hundred dollars was advanced on the price of said lumber on the date of the contract. Garrett abandoned the contract, and Ferrell went on and completed it, and stacked the lumber in controversy near by the railroad track, at Peck Station, on the land of the defendant Peck under an agreement to pay him $1.00 per car yardage. Ferrell was also indebted to Peck and his son upon an individual store account to the amount of $265.

Ferrell claimed that plaintiff owed him, and refused to load the lumber on the cars until he was paid. He also authorized Peck not to permit any one else to load the lumber. Plaintiff claimed that it had over paid Ferrell, and sent its agent, John Hugbert, in November or December, 1906, to Peck Station to load the lumber on the cars. When Hugbert went to load the lumber he inquired of Peck to know the amount of yardage due him from Ferrell, and proposed to pay it. Peck refused to tell him, saying that he did not think he (Hugbert) had anything to do with settling the business between him and Ferrell. Hugbert persisted in his endeavor to load the lumber, whereupon he was assaulted and driven off the ground by Peck; hence this action.

It clearly appears from the two written contracts herein referred to that the title to the lumber in controversy was in plaintiff, both by virtue of the deeds to G. E. Breece, its president, for the standing timber, and by virtue of the contract of January 20, 1906, fixing the price which plaintiff was to pay Ferrell and Garrett for the different grades of one inch oak boards. Title had never passed from plaintiff; the contract of

January 9, 1906, expressly reserved it. Ferrell was never at any time the owner, consequently he did not have a seller's lien. Plaintiff having the title, had a right also to the possession as against Ferrell. Plaintiff had a right to the possession against Peck also. Ferrell having no title to the lumber himself could not pledge it to Peck for his own debt and thus defeat plaintiff's right. Whether, or not, Peck had a right to retain possession until his claim for yardage was paid, it is not necessary for us to decide; we doubt if he had. But even if he had such right, he lost it by refusing to allow plaintiff's agent to pay it. Peck was holding the lumber to secure the debt owing by Ferrell to him and his son; this he clearly had no right to do. Peck's holding by authority of Ferrell made it, for the purposes of this action, their joint detention, and rendered them liable jointly to plaintiff.

It is insisted that plaintiff had no right to possession until the lumber was loaded on board the cars. If this were true Ferrell could refuse to load it and thus defeat plaintiff's rights altogether. Such view is untenable. If plaintiff chose to receive the lumber at the railroad before it was loaded on the cars, and at a place different from the one agreed upon, this is certainly not a matter of which defendant can complain. He would be thereby relieved of an additional amount of work and, necessarily, of additional expense.

Does the verdict sufficiently describe the property? It is as follows: "We the Jury find for the plaintiff the lumber in its declaration described and fix the value of each stack or pile of lumber therein described: Stack or pile therein described No. 1 containing 4450 feet, we value at $80.10;" and so on, describing the eight several piles by giving the number, and the exact number of feet of lumber in each, and value per pile, just as it is alleged in the declaration. In an action of detinue, when a verdict is for the plaintiff, "for the property described in the declaration," the court has a right to look to the declaration in aid of the verdict in the matter of description of the property; and, doing so in this case, we find that the property recovered is rendered quite certain. *Boalwright* v. *Meggs,* 4 Munf. 145; *Avery* v. *Avery,* 12 Tex. 54 (62 Am. Dec. 513). By reference to the declaration, we find the lumber described with much more particularity than it is in the verdict. The

third amended declaration alleges that there were eight distinct stacks of oak lumber. Each pile is therein described separately both by number and location, and by the number of feet contained in it; the value of each pile is given; the manner in which each is stacked; its relative location to the others and to the railroad; and each one is described as consisting of one inch oak boards. How could property of such character be described with much more particularity? This is certainly sufficient description. The purpose of description in the pleading required to be given of property, in an action of detinue, is to put the defendant upon notice of what he is expected to defend; and also for the purpose of constituting a recovery in the action, if a recovery be had, a bar to a second action for the same property. The particularity with which it should be described depends, of course, on the nature and character of the property. "This particularity, however, need not extend to every matter of detail and need only include enough to identify them either as individual articles or as a number of things belonging to a particular class, according to the circumstances of each particular case." Shipman's Pleading, 240. See also Hogg's Pl. & Pr. section 127; Chitty's Pl. & Pr. 377-378; *Thompson* v. *Pearce,* 49 Ala. 210; *Foredice* v. *Rinehart,* 11 Or. 208. Testing the declaration by the rule laid down in these authorities, we think the description it gives of the lumber is sufficient. The verdict, read in the light of the description given in the declaration, is also sufficiently descriptive of the property. The description in the verdict does not vary from that given in the declaration, but is not as complete.

The court erred in setting aside the verdict and granting defendants a new trial, and this action of the court will be reversed; and this Court will enter such an order as the lower court should have entered, which will be to overrule, defendants' motion to set aside the verdict and grant them a new trial, and will enter judgment upon the verdict in favor of the plaintiff against the defendants, John F. Ferrell and J. E. Peck, Sr., for the lumber described in plaintiff's declaration, if it is to be had; and if not to be had, then that it recover the alternative value thereof, together with its costs expended about its suit in the lower court and in this Court.

*Reversed and Rendered.*