# CHARLESTON.

## CROSTON v. McVICKER.

Submitted March 24, 1915.    Decided June 8, 1915.

1.  EJECTMENT—*Damages Recoverable—Rental Value—Destruction or Waste.*

   In ejectment, plaintiff may recover the rental value of the land for purposes to which it is reasonably adapted, and damages for

destruction or waste wrongfully caused by defendant while in posses-
sion.   (p. 465).

2.  SAME—*Verdict—Boundaries of Land—Judgment.*
    To serve as the basis for a judgment for plaintiff in ejectment,
the verdict must fix with reasonable certainty the exterior boundaries
of the land in controversy; otherwise no such judgment can be
entered thereon.   (p. 463).

3.  SAME—*Claim for Damages—Time for Filing.*
    A plaintiff in ejectment may file his claim for damages at any
time before the selection and empanelment of the jury; subject,
however, to the right of defendant to a continuance upon his motion,
made in due time and sustained by proof of fraud or surprise operat-
ing to his prejudice.   (p. 464).
    (ROBINSON, JUDGE, absent.)

Error to Circuit Court, Taylor County.
Ejectment by Elsworth Croston against Benjamin Franklin
McVicker.   Judgment for plaintiff, and defendant brings
error.

*Reversed, and new trial awarded.*

*John G. St. Clair* and *Warder & Robinson,* for plaintiff in
error.

*C. M. Murphy,* and *J. Guy Allender,* for defendant in error.

LYNCH, JUDGE:

In ejectment, plaintiff recovered judgment for the posses-
sion of 2 1-2 acres of land situate in Taylor county and $450
damages for its detention; and defendant, for reversal, as-
signs uncertainty in the verdict and excessiveness of the
quantum of damages awarded.

The declaration describes the tract as "beginning at a
dogwood and running thence S 63 E 32 to a chestnut, thence
S 55 W 28 to Pleasant creek, thence N 10 W 31 1-2 to the
beginning". These are the calls in the deed for the same
land from Knotts to Bartlett made in 1864. The deeds from
Bartlett to Loudin of June 13, 1902, and from Loudin to
plaintiff of March 16, 1907, described the land, not by any
definite courses and distances, but as "lying on the waters of
Pleasant creek, bounded on the south by lands of B. F.
McVicker, on the east and north by lands of C. E. Conway,

and on the west by Pleasant creek". The verdict follows the description in the declaration and in the Knotts-Bartlett deed.

Not finding the dogwood called for as the beginning corner, Morrow, the county surveyor, to whom the case was referred with direction to do any surveying required by either party, began at the chestnut and, with corrections for magnetic variation, ran the second call S 57° 24' W 28 poles to a stake on a bank designated by defendant as the bank of the old creek bed; thence N 7° 36' W 508 feet. Returning to the chestnut, he ran N 60° 36' W 31.75 rods, that being the call from the dogwood corrected and reversed to the chestnut, and, at the intersection of the two lines N 60° 36' W and N 7° 36' W, located the corner designated as a dogwood. About half the distance from the dogwood to the stake on the creek bank, the N 7° 36' W line coincides with the bed of Pleasant creek, but for the other half the creek veered outward from that line, thus virtually excluding the land actually in controversy from the area embraced by the boundary lines called for in the Knotts-Bartlett deed. Evidently to include this parcel, the report says "plaintiff then had the S 57° 24' line extended from the stake on the bank of old creek to center of new creek, a distance of 9.65 rods".

It is clear, therefore, that, although the jury found for the plaintiff, its verdict left undetermined the ownership and right to possession of the disputed parcel; because it followed the calls of a deed made in 1864, without any correction for variation from the true magnetic meridian or reference to the Morrow survey or to the land really in controversy. It settled nothing of vital importance to plaintiff or defendant. Of course, where the jury finds for the plaintiff the premises as described in a declaration containing a reasonably certain description of the land, which the proof supports, the verdict will usually be deemed sufficient. *Messick* v. *Thomas,* 84 Va. 891; *Timber Co.* v. *Ferrell,* 67 W. Va. 14. But where, as in *Miller* v. *Holt,* 47 W. Va. 7, there is a definite call for course and distance as the division line between plaintiff's and defendant's lands, the true location of which is the real controversy in the suit, the jury must ascertain and fix the location of such line, and a verdict which merely finds for the

plaintiff the land as described in the declaration does not determine the question raised by the pleadings. To suffice as a basis for judgment, the verdict must identify the land claimed, with reasonable certainty, by fixing its exterior boundaries. The same rule obtains in an action of detinue. *Timber Co.* v. *Ferrell, supra.*

Defendant's disclaimer by the metes and bounds stated in the declaration, without designating the creek claimed by the plaintiff as the true boundary line, did not entitle him to a dismissal of the action. Obviously, he did not disclaim title to the strip lying between the old and new creek beds, the right to which is the sole foundation of this litigation.

Nor was defendant prejudiced by the filing of plaintiff's statement of damages after the panel of twenty jurors were sworn on their *voir dire* but before any further proceeding towards the selection of the trial jury. Such statement may be filed at any time before the trial. Permission to file it after the commencement of the trial, however, should be refused, if filing of the statement would operate as a surprise or fraud upon defendant. Whether it may be filed after the defendant has appeared and pleaded to the action is a matter within the discretion of the trial court; but such discretion should be exercised so as to avoid surprise and injustice to him. *Witten* v. *St. Clair,* 27 W. Va. 762; *McClain* v. *Righter,* 34 W. Va. 186. Defendant did not move a continuance, nor attempt to show any fact upon which to base such motion.

The damages allowed plaintiff are not sufficiently supported by the proof. His claim consists of four separate items: injury to and destruction of fruit trees and crops on the disputed land, $100; destruction of a fence along Pleasant creek, $50; denial of access to Pleasant creek to secure water for stock and domestic use, $150; deprival of the use of a coal mine, $500. But little evidence tends to sustain the first item. Neither the number nor the value of the fruit trees appears, except plaintiff's statement that "about a hundred of them were peach trees" grown by him from seed, and "some of the apple trees I had got two years before that and some I had got about a year before that" and "some came down as low as 15 cents and they ran on up". Of the crops he said: "I had some nice bunch beans and a nice potato

patch, and they destroyed everything I had, didn't raise anything that summer, and a nice strawberry patch" scattered at different places over "about half an acre". The evidence concerning the destruction of the fence is still more meager and indefinite: "Q. You have an item here for destroying fence, $50. A. Well, I had a nice lot of posts laying there, and he hauled them along with the others. I think there were 80 or 90 of them. Q. What damage did you sustain by reason of his removing that fence. A. Well, a hundred dollars". Asked as to the third item, plaintiff said: "Well, I had some cows, and had to get water for my cattle and everything in my house, and they cut me off from the creek, I had to carry it a way over from another place nearly a mile I expect" during the two years of detention by defendants.

But the principal item is that of $500 for depriving plaintiff of the use of his coal mine for two years; and apparently upon the evidence concerning it the jury in large part based its award of damages. Through an opening on the western side of the creek and near to it, plaintiff prior to the interruption of his possession by defendant had mined coal from the 2 1-2 acres for local customers, transporting it over a private way along the stream and by the mouth of the mine. During the two years immediately prior to the suit, defendant, holding hostile possession of the disputed strip, built and maintained a barbed wire fence along the creek, thereby closing the mouth of the mine and obstructing plaintiff's use of the roadway. Thus he was prevented from marketing coal from his lands. The evidence in support of the $500 item consists solely of estimates, ranging from $250 to $500, made by various witnesses, of the extent of his damage by reason of his exclusion from the mine. These statements were based upon profits plaintiff would have made from the coal he could have mined, but was prevented from mining, during the two years of defendant's detention.

Was this the proper measure of such damages, even if sustained by sufficient proof? Section 30, ch. 90, Code, authorizing recovery therefor in ejectment, provides that the jury shall "assess the damages for mesne profits of the land for any period not exceeding five years previously to the com-

mencement of the suit until the verdict, and also the damages for any destruction or waste of the buildings or other property during the same time for which the defendant is chargeable''. Here, of course, there was no destruction or waste of the coal. It remained intact in the ground. Some authorities define mesne profits to be compensation for use and occupation. *Henry* v. *Davis,* 149 Ala. 359, 13 Ann. Cas 1090. But the usual measure for recovery in such case is the annual rental value of the land. *West* v. *Hughes,* 1 Har. & J. (Md.) 574; *Mitchell* v. *Mitchell,* 10 Md. 234; *McLaughlin* v. *Barnum,* 31 Md. 425; *Credle* v. *Ayers,* 126 N. C. 11; 15 Cyc. 205. It is the standard contemplated by our statute as compensation for detention. Plaintiff, therefore, can recover only a fair rent for the use and occupation of the premises for the purposes to which they are reasonably adapted. ''This constitutes the rents and profits, in the legal sense of the terms, of such property, and is all the owner can justly claim in this shape from the occupier''. *Worthington* v. *Hiss,* 70 Md. 172. In *Bolling* v. *Lersner,* 26 Gratt. 37, the vendor of land refusing delivery of possession after payment of the purchase money, the vendee by suit procured a decree for specific performance and for an account of the rents and profits. The court held: ''In estimating the rents and profits of the land thus held by the vendor, the annual value of the land in the hands of a prudent and discreet tenant upon a judicious system of husbandry is the proper rule in the case, to be influenced in some measure by the mode of treatment of the land by the occupant. Though in such case the rents are estimated, it is proper to charge interest upon them''. So in *Lyons* v. *Real Estate Co.,* 71 W. Va. 754, it was held: ''In an action by an owner of land for damages for a trespass, consisting of the building and maintenance of a structure on his land by an owner of adjacent land, only temporary damages are recoverable, and the measure thereof is the rental value of the land together with compensation for loss of crops, trees, shrubbery and the like, and injury to the residue of the lot or tract.''

To afford opportunity for correction of the various erroneous rulings and findings discussed, we reverse the judgment, and remand the case for new trial.

*Reversed, and new trial awarded.*