# CHARLESTON.

## STANTON v. THE CITY OF PARKERSBURG.

Submitted February 9, 1909.   Decided December 7, 1909.

1. MUNICIPAL CORPORATIONS—*Defective Streets—Liability.*
   Section 53, chapter 43, Code, imposes an absolute liability on incorporated cities and towns for injuries sustained on account of its public streets and sidewalks being out of repair, or obstructed in such a manner as to make it dangerous to travel thereon in the ordinary modes. (p. 395).

2. SAME—*Obstruction in Streets—Precautions.*
   In case of necessity such city or town may permit a temporary obstruction of any of its public streets or sidewalks, but it is bound to take proper precaution to warn the public of the danger occasioned by the obstruction. (p. 396).

3. DAMAGES—*Personal Injuries—Amount—Question for Jury.*
   In an action for negligently causing a personal injury, the

jury are to judge from the nature and extent of the injury, the pain and mental anguish produced by it, what is a reasonable compensation. .(p. 397).

4. . TRIAL—*Instructions—Necessity—Theory of Case.*

When an instruction, embodying an hypothesis, dependent upon the finding of a certain fact by the jury, has been given for one party, it is error to refuse an instruction for the op-posite party, stating the converse of the legal proposition embraced in the one given, there being evidence tending to sustain both theories of the case. (p. 398).

Error to Circuit Court, Wood County.

Action by George W. Stanton against the City of Parkersburg. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*W. S. Allen,* for plaintiff in error.

*J. W. Vandervort* and *George W. Johnson,* for defendant in error.

WILLIAMS, JUDGE:

About nine o'clock on the night of June 12th, 1907, George W. Stanton was going along Murdock Avenue, one of the public streets in the City of Parkersburg, and was tripped by a wire netting stretched across the sidewalk to protect a piece of recently made cement sidewalk in front of the property of J. W. Jones, and was thrown down and hurt. He brought an action against the city for negligently causing the injury, and on the 12th of March, 1908, recovered a verdict and judgment for $550.00. To this judgment defendant obtained a writ of error and *supersedeas* from this Court.

A number of errors are assigned as cause for a reversal. The first is the overruling of the demurrer to plaintiff's amended declaration. We see no error in this; the amended declaration states a good cause of action.

The second, third and fourth assignments relate to the action of the court in overruling defendant's motion to exclude. plaintiff's evidence and direct a verdict for defendant, and overruling its motion to set aside the verdict and grant a new trial. Bill of exceptions No. 3 makes the evidence a part of the record; and, without expressing any opinion in regard to the weight of the evidence, we may very properly say that these bills of

exceptions show no error.    The evidence, apart from agreed facts, consists altogether of the testimony of witnesses; and the rule of law making the jury the sole judges of the credibility of witnesses and of the weight of evidence has been so often repeated, and is so well understood, that we need only to mention it.    We can shed no new light upon it by discussing it.    It is proven that the cement walk upon which plaintiff fell was surrounded by a poultry wire netting which extended along the curbing and across the sidewalk at either end.    This netting was about four feet high, and was made of wire about the size of a broom straw.    The walk was laid for one J. W. Jones by a contractor by the name of M. G. Jenkins.    The wire netting was held in place by stakes driven in the ground near the curbing at either end of the cement walk and the two ends drawn around these stakes and across the sidewalk and securely fastened to a house, or some other object.    It was placed there on the 8th of June, when the work was completed, and remained there until the 13th.    Plaintiff was injured on the night of the 12th about nine o'clock.

Section 53, chapter 43, Code, makes it the duty of the city to keep its streets and sidewalks in repair and free from dangerous obstructions, and if it fails to do so, and injury results, it is liable.    A city may permit temporary obstructions of its streets and sidewalks, in cases of necessity, but it is bound to take proper precaution to warn the public against the danger occasioned by the obstruction.

Edwin Howe, an employe of Mr. Jenkins, testified that on the night plaintiff was hurt, and just before dusk, between seven and eight o'clock, he had put up two lights, one at either end of the netting.    This is the only testimony on behalf of defendant to show that any signal lights were placed on the wire on the night of plaintiff's injury.    The plaintiff and a number of other witnesses introduced by him testified that no lights were there when he was injured.

F. M. Barringer says that he went down town about eight o'clock on the night of the accident and went back about nine o'clock; that he passed by the place, and that there were no lights.    Samuel McConaughey states that he was coming up the street about fifteen feet behind Stanton and saw him fall over the wire; that in going to assist Stanton he came near

falling over the wire himself; that he pressed the wire down a little, got over it and helped Stanton up from the pavement; and he says there were no lights. A boy, John Wolfe, was with McConaughey at this time, and he says they were not more than a quarter of a square away from Stanton, and heard him fall. He says there were no lights there. W. T. Hupp says that he passed along about five or ten minutes before plaintiff got hurt and ran into the wire himself. He also says there were no lights. A. J. McFarland says that he passed the place about half past seven o'clock of the same evening; that it was not then dark, and that there were no lights there at that time.

We admit the force of counsel's argument, that it is hard to understand how a man of ordinary height could be tripped on such a netting and, in falling, fall over it; provided it was upright and was drawn as taut at the top as at the bottom. But its condition in this particular does not appear, and if the stakes were not kept firm and upright, the top wire would become slackened and the netting would lean over; if such was its condition at the time plaintiff was hurt, his feet very probably struck the bottom of the netting before his body touched the top; and, if walking rapidly, as plaintiff says he was, he would be very likely to fall; and, in falling, would fall over the wire. The fact that he did fall over it is not denied by any witness. Witness McConaughey saw him over the netting and helped him up. J. W. Jones, a witness for the defendant, says that he learned of the accident about noon on the following day, and found a spot of blood on the sidewalk about eighteen inches from the netting on the inside of it, and that he took the hose and washed it off. Plaintiff testified that in the fall, he knocked out six teeth, lacerated his face and ear; that he bled a great deal from his nose and ear, and that the hurt he received has permanently impaired his hearing in one ear.

Bills of exceptions Nos. 6 and 7, relate to the giving of plaintiff's instructions Nos. 7 and 6. We do not think the court erred in giving either of them.

Instruction No. 6 is as follows: "The Court instructs the jury that while the defendant had the right to temporarily obstruct the passage of travel over the sidewalk where the plain-

tiff's injury is alleged to have occurred, for the purpose of grading and paving the said sidewalk, it was not authorized to leave or permit to be left said obstruction while undergoing such grading or paving in such condition as unnecessarily to expose those who might pass upon it to danger, and that in such condition, said obstruction or sidewalk should not have been left without signals or beacon lights, especially at night, to warn travellers of its condition against such danger, and that if, the jury believe from the evidence that such reasonable and precautionary measures were not adopted for the safety of such citizens or travellers, and the defendant by reasonable diligence could have ascertained that fact, the defendant was culpable and is liable for injuries, if any, resulting to the plaintiff therefrom; if without such knowledge and without any fault on his part, he was injured thereby." This instruction correctly propounds the law applicable to the case. It submits to the jury the question whether, or not, the city had taken the proper precaution to warn pedestrians of an obstruction on its sidewalk which was liable to cause injury if no signal of warning was used, and also the other question whether, or not, the plaintiff himself was in fault, or was guilty of contributory negligence. Both of these questions were for the jury to decide upon the evidence. This Court has held a number of times that section 53, chapter 43, Code, imposes an absolute liability upon cities and towns for injury resulting from failure to keep its streets in repair and free from obstructions. *Biggs* v. *Huntington,* 32 W. Va. 55; *Arthur* v. *City of Charleston,* 51 W. Va. 132; *Chapman* v. *Milton,* 31 W. Va. 384; *Bowen* v. *City of Huntington,* 35 W. Va. 682. There being an absolute liability on the city, it was not material to plaintiff's recovery to show want of reasonable diligence on the part of the city. It was bound to take notice of the obstruction, and the existence of the dangerous obstruction unguarded by any signal light, or other warning, was negligence *per se. Sheff* v. *City of Huntington,* 16 W. Va. 307; and cases above cited. The jury had to determine, from the character of the obstruction, the darkness of the night, and from the other evidence in relation to the lights, whether, or not, plaintiff was guilty of contributory negligence.

Instruction No. 7 relates to the measure of damages, and

tells the jury what facts they may consider in estimating the amount of damages in the event they find in his favor. It is unnecessary to copy the instruction in this opinion. It is such an instruction as is usually given in such cases and correctly states the law, and is applicable to the case. Indeed, counsel for defendant seems to have abandoned his objections to both of the foregoing instructions, as he does not discuss them in his brief.

Bill of exceptions No. 5 relates to the court's refusing to give its instruction No. 2, which is as follows: "The Court instructs the jury that if they believe from the evidence in this case that the defendant in the construction of the improvement of the sidewalk at the place named in the declaration had, at the time of the injury complained of, a lantern or beacon light at said place, that the plaintiff was not exercising ordinary care when the said injury occurred and they must find for the defendant." This instruction states the converse of No. 6, given on behalf of plaintiff; and a majority of the Court are of the opinion that it was prejudical error not to give it and, reverse the judgment for this error. But I can not concur in this view. I think the court was justified in refusing the instruction for two reasons: (1) because plaintiff's instruction No. 6 covers the entire question of defendant's negligence and plaintiff's contributory negligence, and in effect, tells the jury that before plaintiff can recover they must believe the city was negligent and that plaintiff was not, although according to our decisions construing section 53, chapter 43, Code, plaintiff was not bound to prove the city's negligence; defendant's No. 2 states nothing more than the converse of this proposition; it is a necessary sequence flowing from plaintiff's No. 6; if the jury did not believe the city was negligent and the plaintiff was careful to avoid injury there was only one thing for them to do, i. e., find for the defendant. I think it would be a reflection on the intelligence of juries to hold that it was necessary to instruct them on a question so self evident as this. If they could not find for the plaintiff, as a matter of course, they had to find for the defendant; and this, in effect, is all that defendant's No. 2 would tell them. It means no more than if the court had said: "if you can not find for the plaintiff you must find

for the defendant." Defendant's No. 2 presented no different theory, and no different phase of the case than was clearly comprehended in plaintiff's No. 6. (2) I think the court was further justified in refusing it, because there is no appreciable evidence on which to base it. The testimony of plaintiff and three other witnesses proves that no lights were on the wire netting when the injury occurred; this testimony is not disputed by any other witness. It is true a witness for defendant says he hung out the lanterns between seven and eight o'clock, but neither he, nor any other witness, says the lights remained there; and I do not think the natural presumption of fact that they remained there where he had placed them and continued to give light, could be considered as evidence conflicting with the testimony of four witnesses to the fact that, at the time the injury occurred, they were not there; one is indirect evidence *tending* to prove the fact, while the other is direct and positive *proof* of the fact; it was not necessary to disbelieve defendant's witness in order to find in favor of plaintiff; all the witnesses may have testified truly; the verdict is not inconsistent with the truth of the testimony of any witness. But, on the other hand, a finding for the defendant would have required the jury to disregard all the direct and material testimony in the case; this the jury could not do without good reason for it, and none appears; they are governed by the evidence, as well as by the law, and I see no appreciable evidence in the case to support the instruction; hence, I think it clearly appears that defendant was not prejudiced by the refusal of the court to give it, and I would affirm the judgment. I do not controvert the law of the instruction; I deny that defendant was prejudiced by its refusal.

The judgment of the lower court will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*

ROBINSON, JUDGE. (*dissenting*):

The judgment should be affirmed. The refusal to give instruction No. 2 was not error. There is no conflict of testimony upon which it could be based. No witness maintains that the city had a warning at the place of danger at the time the injury happened. It is established without contradiction

that none was there at that time. The witness, Howe, does not even pretend to say that a warning was there when plaintiff fell. The time of which he speaks was an entirely different time—much earlier. It was the city's duty to have a warning there at all times. But the city was not entitled to an instruction based on the theory that it did its duty in that regard, in the face of uncontradicted evidence that it did not.

POFFENBARGER, JUDGE:

I do not think the giving of the plaintiff's· instruction No. 6 excused or justified the refusal of defendant's instruction No. 2. Though the subject matter of the latter is adverted to in the former, and the defendant asked a mere statement of the converse of the proposition, hypothetically stated for the plaintiff, and the jury is presumed to be composed of reasonable and intelligent men, it is elementary law that a party to a trial before a jury is entitled to have his theory of the case hypothetically submitted to the jury by means of an·instruction, if it is properly framed, based on evidence and not covered by others given. His fate is not to be left to the presumed reason and intelligence of the jury, uncontrolled by direction or guidance of the court, in respect to matters of law, unless he signifies his willingness to let the jury take it in that way by his failure to ask for such direction and guidance. It is only proper in the absence of a request for an instruction. Notwithstanding the intelligence of the jury, law everywhere says a party to a trial is always entitled to have that intelligence directed to the issue of fact, committed to the jury by the law, by an instruction, if he demands it. If he does not, he is presumed to have waived his right to it. All juries are not of equal intelligence and conditions in all trials are not the same. There are degrees of intelligence and differences in condition. A party to a trial has always and everywhere been permitted to determine for himself, whether, owing to abnormal conditions pertaining to the character and composition of the jury or the conditions surrounding it, he will let his case go to it with or without. the influence and control of proper instructions from· the court. However intelligent the jurors may be, and whatever the conditions surrounding them, they are not supposed to know any law, though they may, and a party may treat

66 W. Va.

them as being wholly ignorant of that subject. It is his absolute right. They are triers of fact, not declarants of law. This is the theory of our system of jury trial, and such is one of the rules, everywhere recognized. We must take the law as we find it, whether it is such as we would like it to be, or would have made it, or not. It is unnecessary to cite the many cases illustrating the rule. It is of daily application and resorted to, as the criterion for the determinination of every question pertaining to the giving or refusing of instructions. I do not understand it to be denied here. The argument is that the defendant's theory or hypothesis, set out in the instruction in question, is embodied in the plaintiff's instruction No. 6. In testing the correctness of this position, it is necessary to keep in mind the nature, purpose and object of an instruction. It is a direction to the jury to observe, consider or give effect to something, found in the evidence, or some rule applicable to it, or conditionally to declare a certain result. If but one result is possible in the state of the evidence, it is an absolute direction to find that and nothing else. It is emphatically and essentially a direction or order to do something. We look in vain at instruction No. 6, given for the plaintiff, for any direction or order to the jury to do or find anything in favor of the defendant. It tells them to find for the plaintiff, if they believe there were no beacon lights or danger signals at the place at which the injury occurred at the time it happened, but it does not say what they shall do in case they should find such lights or signals were there at that time. In neither words nor effect, does it say they shall find for the defendant in the latter event. As to what shall be done in that aspect of the case, it is utterly silent. Finding that, the jury could well say, for anything in the letter of the instruction, "We have no direction as to what we shall do," and accordingly find for the plaintiff. We may say they would not because it would be unreasonable. We could have said the same thing in many other cases, in which we have reversed judgments for refusal to give instructions, declaring law so plain that any man of ordinary sense might well be presumed to know, or to be able to infer it from other legal propositions stated in the case. It leaves it to the jury to infer their liberty or authority under the law so to find. The ques-

tion is one of law, not fact, and the defendant was entitled to
have the law declared to the jury by the court, and was not
bound to leave it to the jury, because of their supposed in-
telligence, to infer it for the defendant from a separate and
distinct proposition of law stated for the plaintiff.    If this
may be done in one case, why not in every case?    There are
many legal propositions, so plain that we, as men, may very
well suppose an intelligent jury would apprehend · and apply
them, but I know of no instance in which a court has refused,
on that ground, to declare them to a jury, when properly
requested.

Nor can I agree to the view that there is no evidence of the
existence of lights at the place of the injury at the time there-
of.   A witness stated that he had placed them there just a
short time before it happened.   They had no power of them-
selves to depart.    The presumption is ·that they remained
there, if he placed them, as he says he did, and, whether he
did or not, depends upon the jury's belief as to the truthful-
ness of his statement.    That presumption is not destroyed by
the testimony of other witnesses who say the lights were not
there at the time of the injury.   It may be overcome by this
testimony, but it is not rendered non-existent.   It remains in,
the case and operative as evidence, and, therefore, justifies
the giving of the instruction, embodying the defendant's theory
of the case.   Whether it is sufficient to sustain a finding for
the defendant, does not arise on the application for an instruc-
tion.   If there is any evidence appreciably tending to sustain
the hypothesis of an instruction, it should be given.   The suffi-
ciency of the evidence to sustain a verdict, must be raised by
a motion to exclude, a demurrer to evidence or a motion to set
aside the verdict.