# CHARLESTON.

### C. C. WILSON *et al. v.* C. G. McCoy *et al.*

Submitted April 25, 1923.   Decided May 1, 1923.

1. EJECTMENT—*Plea of not Guilty Puts in Issue Right and Title to Whole of Land Sued For.*

    When sued in ejectment the general rule is that the defendant should examine his title and possession, and if he would avoid the trouble and consequences of a trial, he should promptly disclaim any and all lands to which he lays no claim or in which he has no interest; or if he has any right or interest in any part of the land sued for, he should designate the part and disclaim the residue, for the plea of not guilty alone puts in issue the right and title to the whole of the land sued for.   (p. 670).

2. SAME—*Defendant May by Leave Before Verdict Withdraw Plea of not Guilty and Enter Disclaimer and be Relieved of Costs as to Land Disclaimed.*

    But notwithstanding this general rule of practice, a defendant in ejectment may at any time before verdict, by leave of the court, withdraw his plea of not guilty and put in his disclaimer to the whole or a part of the land sued for and be relieved of the costs thereafter incurred respecting the land disclaimed.   (p. 671).

3. WITNESSES—*May be Impeached by Showing Prior Contradictory Statements as to Facts Testified to by Him.*

    When the proper foundation has been laid therefor by cross-examination, a witness may be shown by another witness to have made contradictory statements on prior occasions respecting the facts testified to by him, for the purpose of discrediting his testimony thereon.   (p. 671).

4. TRIAL—*Where any Appreciable Evidence Sustains Theory of Instruction, Court Should Give Law in Language of Counsel.*

    If there is any appreciable evidence sustaining the theory of an instruction to the jury; the court should generally give the law in the language of the instruction proposed by counsel.   (p. 671).

5. SAME—*Propositions Covered by Given Instructions Need not be Repeated.*

    When instructions given fully cover the subject thereof the some propositions need not be repeated in other instructions.   (p. 671).

6.   EVIDENCE—*Trial—Instruction that Ex Parte Documents Should be Preferred in Establishing Corners of Land in Ejectment Suit Held Properly Denied.*

An instruction to the jury, on the trial, of an ejectment suit, which would have told the jury respecting an ex parte map, survey and report referred to in the testimony, that if they believed such map, survey and report "has not been objected to, disproved or impeached but stands unquestioned for its full worth, then said survey, plat and report should be preferred in establishing the exact corners and lines on the ground when made from corners and distances set out in the various deeds under which the plaintiffs and defendants claim title," was rightfully rejected as not justified by the facts and because misleading and not propounding a correct legal proposition. Generally such ex parte documents have no probative value independently of the testimony of the witnesses and when used to illustrate and explain their testimony. (p. 671).

7.   TRIAL—*Instructions not Justified by Evidence, and Conflicting With Other Given Instructions, Properly Rejected.*

Instructions to the jury not justified by the evidence and in conflict with other instructions propounding the law applicable to the case, are properly rejected. (p. 671).

8.   EJECTMENT—*Verdict Should Describe Property Where Disclaimer is Filed.*

In the trial of an ejectment suit, when the defendant after trial begun is permitted to withdraw his plea of not guilty or has filed a disclaimer to a part of the land sued for, a general verdict for the defendant should not be received; there should be a verdict for the plaintiff clearly describing by metes and bounds the land disclaimed or recovered; and if the verdict be for the defendant for the part of the land not disclaimed, it should also clearly describe that, so as to fully settle all the questions in issue and submitted to the jury, otherwise the judgment should be reversed, the verdict set aside and a new trial awarded. (p. 671).

Error to Circuit Court, Roane County.

Suit by C. C. Wilson and others against C. G. McCoy and others. Judgment for defendants, and plaintiffs bring error.

*Reversed, and new trial awarded.*

*J. L. Wolfe, W. F. Boggess,* and *Lewis H. Miller,* for plaintiffs in error.

*Harper & Baker,* for defendants in error.

MILLER, PRESIDENT:

This is a suit in ejectment brought to settle the question of location, right and title to a tract of fifty acres known in the record as the Abner Suttle tract. The facts are substantially the same as were involved in the suit of unlawful entry and detainer between the same parties, heard here on a writ of error to the judgment in favor of defendants and reported in 86 W. Va. 103.

We think it quite unnecessary to restate all the facts and issues again presented in this case, so well and clearly stated by Judge LYNCH in his opinion on the former hearing.

As in that case, so again in this, the one fact determinative of the whole controversy is the true location of what is called the base line between lots Nos. 9 and 10 of the Bartholomew and Antoine Terrason 20,000 acres as surveyed by Nathan Smith, surveyor, in 1839, and afterwards sold as forfeited and delinquent land. As was said by Judge LYNCH in the former case, the true location of this division or base line will concededly settle the rights of the parties. As called for in the plat of surveyor Smith and subsequent deeds for the lots and parts of said lots bounded thereby, it began at a white oak on or near a fork of Spring creek in the line of No. 1, the same being a corner to No. 9; thence with the same N. 63½ W. 1200 poles to a black oak, in the most westerly line of the entire survey. The white oak called for as the beginning corner is not in dispute; it is still standing, well marked; and there is no controversy as to its identity or location.

The land claimed by plaintiffs as described in the immediate deed from Margaret J. and Cyrus A. Crislip, Thomas P. Ryan and Walter Pendleton, of March 23, 1916, is as follows: "Beginning at the corner of the Roberts survey; thence S. 62 E. 200 poles to the corner of W. Casto and L. Jenkins; thence N. 28 E. 40 poles to a chestnut oak; thence N. 62 W. 200 poles to a sugar; S. 28 W. 40 poles to the place of beginning, containing 50 acres, more or less."

The Roberts survey called for is a tract of 400 acres, part of said lot No. 10, but lying west of the land sued for, and as described in the deed of John E. and Sarah Wine to William Roberts, of November 10, 1854, is bounded as follows: "Be-

ginning at a black oak, same corner to No. 9, and running with the line of No. 9 and 10 S. 62 E. 500 p. to a white oak corner to Shearman Self knowing tree, N. 18 E. 130 p., to a hickory; thence in a parallel line with first named line thence to a stake point on the base line of the entire survey, thence S. 30 W. to the place of beginning.''

The white oak corner to Shearman ''Selfknowing tree,'' described in this deed, is manifestly in the base line between lots Nos. 9 and 10, and the corner called for in plaintiffs' title papers. As observed by Judge LYNCH in the former case, the surveyors for the plaintiffs located the white oak corner called for about eight rods north of the white oak stump found and identified by several witnesses for the defendants as the stump of the original timber called for; and since the trial of the unlawful detainer case and the decision here, Sharp, defendants' surveyor, as his evidence shows, has run the base line between lots Nos. 9 and 10, from the white oak to the black oak, and from the black oak as located by him back to the white oak, and found the line passing practically over the white oak stump, the Roberts corner called for, and practically on or along all the fences presumably on said line, and gives it as his opinion that the white oak stump is the original timber called for as the corner to the Roberts survey.

But the true location of this base or division line and of plaintiffs' land, a question of fact, controlled of course by the legal rules and principles applicable, was a question of fact for the jury.

The only plea interposed by the defendants, and the only one that could have been interposed under our statute, was a plea of ''not guilty''; and on the issue presented by this plea the parties went to trial, before the jury impaneled to try it.

The record shows that after the trial had been in progress for a day perhaps, the defendants C. G., A. M., Troy, Grace and Haven McCoy and Harvey Miller were permitted, over plaintiffs' objection, to file a disclaimer, whereby they undertook to disclaim any interest or ownership in any of the lands in controversy or described in the declaration which may be found to lie or be situated within the area bounded as follows: ''Beginning at a point where a white oak stump formerly

stood at or near the east end of a rail fence leading to said point from the southeast and formerly known as the Roberts corner; thence N. 28 E. 40 poles to a wire fence claimed by said Harvey Miller as the southern boundary of his lands; thence with said wire fence S. 58 degrees and 27 minutes East to the lands of Mace, formerly the Radabaugh lands, and more recently known as the Kenney lands; thence S. 28 W. 40 poles to the intersection of two fences immediately south of a small drain; thence N. 58 degrees and 27 minutes to the place of beginning.'' On the filing of this disclaimer, over their objection because coming too late, the plaintiffs moved the court for a continuance on the ground of surprise, which motion the court overruled, and the case proceeded, resulting in a general verdict in favor of defendants and the judgment of the court thereon of *nil capiat* and for costs in favor of defendants.

The first point of error assigned and relied on by plaintiffs is the action of the trial court in permitting the defendants to interpose their disclaimer in the midst of the trial. Undoubtedly when sued in ejectment, defendant should examine his title and possession, and if he would avoid the trouble and consequences of a trial, he should promptly disclaim any and all lands to which he lays no claim or in which he has no interest, or if he has any right or interest in any part of the lands sued for, designate the part and disclaim the residue. Such seems to be the practice prescribed by the authorities. 7 Enc. Plead. & Prac., page 343; 19 C. J. 1121; *N. & W. Railway Co.* v. *Christian,* 83 W. Va. 701, point 3 of the syllabus. The reason of this rule is to avoid trouble and confusion and unnecessary expense in the trial of the case, for the plea of not guilty alone puts in issue the right and title to the whole of the land sued for and imposes upon the plaintiff the burden of sustaining his right and title to the whole of the tract, and a general verdict and judgment thereon is thereafter conclusive between the parties and their privies in estate.

But the rigid rule insisted on by plaintiffs, which would deny a defendant the right to file his disclaimer after issue joined on his plea of not guilty and after trial begun and

before verdict, would be unreasonable. It is not perceived how plaintiffs could be injured, if the defendants are rendered liable for all costs and damages, if any, incurred up to the time of the entering of the disclaimer. On the contrary, it seems to us they would be benefited *pro tanto.* A disclaimer is not a plea; it is a refusal to plead; it is a denial of right or title, although not necessarily a denial of prior possession. The plaintiff may accept the disclaimer and go on to try the question of damages, if any have been claimed by him. 6 Enc. Plead. & Prac. 724. In *Fisher's Heirs* v. *Camp's Heirs,* 26 W. Va. 576, it was held that the defendant, after his plea of not guilty, may, by leave of court, withdraw his plea and abandon his defense, and may make this effective by a simple entry on the record; and after such disclaimer no judgment for costs subsequently incurred may be given against him. For the reasons already indicated the disclaimer does not necessarily entitle the defendant to a dismissal of the action against him, for notwithstanding the disclaimer, plaintiff may be entitled to prosecute the action to judgment for possession and for actual damages, where, as in this state, damages are recoverable when claimed. Section 30, chapter 90, Code 1918; 19 C. J. 1121.

The second point of error relates to the action of the trial court on the trial, in permitting defendants to inquire of several of the witnesses whether W. F. Wilson, husband and father of some of the plaintiffs, had not in their presence on different occasions prior to the trial pointed out to them or in their presence the white oak stump as the southwestern corner and the beech corner as the southeastern corner of the land sued for at different points than as claimed by him in his testimony given on the trial. This evidence was admitted simply for the purpose of contradicting or impeaching the evidence of Wilson, the foundation having been laid therefor on his cross-examination by defendants' counsel. The same question was presented on the trial of the unlawful detainer case, and it was decided that for the purpose of such contradiction the evidence was proper. It may be that in one or two instances the questions may have been asked before the proper foundation had been laid, but the court subsequently

in its rulings limited this class of testimony to such contradiction and for no other purpose, and so told the jury in plaintiffs' instruction No. 10, objected to by defendants. This instruction told the jury they could not consider witness's prior declaration or admission with respect to the location of said corners as binding on the plaintiffs. We do not find any prejudicial error in the record relative to this class of testimony. The plaintiffs' rights and interest in relation thereto were fully guarded and protected before the trial ended.

We now come to the consideration of the points of error with reference to the instructions. The plaintiffs submitted ten instructions, of which the court rejected numbers one to six, inclusive, but gave the remaining four as requested. As bearing generally on the subject, we are referred by counsel to *Hopkins, Brother & Company* v. *Richardson*, 9 Gratt. 485, point 7 of the syllabus, for the proposition that, ''If there is any evidence before a jury tending to prove a case supposed in an instruction asked for, and the instruction propounds the law correctly, it should be given.'' We have so held in this state, if the evidence so tends in' an appreciable degree, not that there is a mere scintilla of evidence, the court should instruct on the law applicable to the theory as asked. 15 Enc. Dig. Va. & W. Va. Rep. 513, and cases there digested; 3 *Id.*, Cum. Sup. 739.

As we held in the trial of the unlawful detainer case, the plaintiffs' rights depend almost wholly on the true location of the base line between lots Nos. 9 and 10 of the Terrason lands, and their whole effort on the trial was to locate that line as their surveyors had attempted to locate it. Their instructions Nos. 7, 8 and 9, given, fully cover their theories, including in the ninth their theory of adverse possession under color of title. Instructions Nos. 1, 2, 3 and 4, referring to the deed of H. A. Wiseman and wife to W. M. McCoy, of May 6, 1914, and other deeds, would have told the jury substantially that if they found the base line laid down on the plat made by the surveyors Thorne, Taylor and Wolfe was there correctly laid down and applied to the ground, they should find for the plaintiffs. This proposition was sub-

stantially submitted to the jury in the instructions given. Of course if the jury should find that the land was located where the plaintiffs claimed it, they would be obliged to locate it there.

Instruction No. 5, however, went farther. It would have told the jury that if they should find from the evidence that the survey, plat and report of Thorne, Taylor and Wolfe, made in December, 1916, and in September, 1917, in evidence, "has not been objected to, disproved or impeached but stands unquestioned for its full worth, then said survey, plat and report should be preferred in establishing the exact corners and lines on the ground when made from the corners and distances set out in the various deeds under which the plaintiffs and defendants claim title." Just what idea this instruction might have conveyed to the jury we do not know, but to say the least of it, it seems misleading and uncertain to us. It seems to imply that there was no objection to the survey, plat, etc., and that it had not been questioned or impeached. The truth is that it was objected to, and there was much evidence tending to show that the base line and corners were not where these surveyors located them. And so far as these *ex parte* plats and surveys themselves were concerned, they had no probative value independently of the evidence of the surveyors, and then simply for the purpose of illustrating their work on the ground. 4 Enc. Dig. Va. & W. Va. Rep. 765, and the Virginia and West Virginia cases there digested. These six instructions may properly have been rejected on the well recognized rules applicable thereto; first, that in so far as proper they were fully covered by those given; second, for singling out certain facts on which the case could not be made to turn and ignoring other facts material in the consideration of the case by the jury; and, third, in withdrawing from the jury the question as to what weight should be given to particular evidence.

Upon the questions raised by the exceptions to the four instructions given at the instance of defendants. Number one related to the burden of proof. No reasons are given here for the objection to it, and our examination of it discloses no good ground for exception thereto.

Instructions Nos. 2, 3 and 4 all assume as a fact proven that T. A. Roberts once owned the land on both sides of the said base line, including the land of defendants and the fifty acres sued for by plaintiffs; and the second instruction told the jury that if in conveying away said tracts he recognized as a corner the point described by some of the witnesses as being a white oak corner to the Roberts land where a white oak once stood, and a point in the run bottom where one fence joins another as the beech corner mentioned in the evidence, and both as being corners to what are called the Butcher and Suttle tracts, then such points, the white oak and beech, are to be accepted as corners to the Suttle tract, unless they believed from the evidence that they should not be so recognized. The third instruction told the jury that if they should believe from the evidence that said Roberts or any other person once owned lands connecting up with each other and which extended across the said base line, and that such person or persons afterwards divided up said lands, that in doing so he or they were at perfect liberty to make the lines thereof at any places they pleased, without regard to said base line. The fourth instruction, based on the same theory of ownership, told the jury that if they believed from the evidence that the white oak stump described by some of the witnesses as the Roberts corner is one corner, and that the point where the fence joins another near the Radabaugh garden to be the other corner of the Suttle fifty acre tract, then they should find for defendants all the lands in controversy except the part disclaimed by them, although the jury might believe that these points were not in the so-called base line mentioned in the evidence.

The objections urged to these three instructions are: first, that there is no evidence in the record to support them; second, that they are in conflict with plaintiffs' instruction number nine, which embodies the rule laid down by the court in the unlawful detainer case for ascertaining the location of the corners and boundaries of the plaintiffs' land; third, that the facts assumed in these instructions are contrary to the evidence introduced by the defendants themselves, particularly the evidence of the witness M. M. Parsons.

It was conceded by counsel for defendants in their original brief that but for the omitted part brought into the case by the supplemental record, consisting of the deed of James White and wife to T. A. Roberts, of June 1, 1855, calling for 1400 acres, the deed of said Roberts and wife to Washington Casto, of July 7, 1855, calling for 200 acres, and the deed of said Roberts and wife to Lemuel Crislip, of July 7, 1855, calling for 400 acres, there would be no evidence justifying instructions Nos. 2 and 3; and it is conceded also that instruction number four is in conflict with plaintiffs' instruction number nine. But counsel say their instruction number four is right and that plaintiffs' instruction number nine is wrong, and that they are not responsible for plaintiffs' erroneous instruction, which was unavailing with the jury and of which they can not complain.

We do not find in these deeds introduced by the supplemental record, nor in any of the other deeds in evidence, any substantial basis for the facts assumed in instructions two and three. All the deeds involving the white oak and beech corners as termini of the southern line of the Suttle fifty acre tract, including the three deeds brought in by the supplemental record, we believe, call for the white oak corner to William Roberts, except the deed of July 7, 1855, from T. A. Roberts to Washington Casto; it calls simply for a white oak without describing it as the William Roberts corner; but Roberts' deed of the same date to Lemuel Crislip does call for the same white oak and describes it as a corner to the William Roberts land. In no part of the record is there any evidence of a departure or of an intention to depart from the original monuments as located on the base line between lots 9 and 10 of the Terrason survey, on the part of any former owner. Of course the owners of these lands, in their conveyances, might, by mistake or intention, have located the corners outside of the base line. If by mistake they had so located them outside of said base line, they might be estopped by their deeds from locating them elsewhere, but it would not follow that defendants would be entitled to the six and one-half acres within the boundary not disclaimed, if they were within the boundary of the fifty acres laid down on the true

base line.  This would depend on the facts as to the location
of the lines and corners called for in the title papers and the
subsequent conduct of the parties.  Unqualified as they were,
we do not think these instructions should have been given.
To say the least, they were misleading and tended to confuse
the jury.  The evidence bearing on this question is substan-
tially the same as in the former case.  The rule of law laid
down for ascertaining the plaintiffs' land in the former case
on the evidence adduced, is correctly stated in plaintiffs' in-
struction number nine, given, and with which defendants' in-
struction number four is in conflict.

The remaining errors relied on for reversal are summed
up in plaintiffs' motion to set aside the verdict as being con-
trary to law and the evidence and because of the misdirection
of the court in the instructions given for defendants.  We
have already disposed of the questions presented by giving
and refusing of instructions.  What should the verdict and
judgment have been?  Certainly the jury should, in the first
place, have been required to locate the base line between lots
Nos. 9 and 10, for that was one of the important facts in
issue.  *Miller* v. *Holt,* 47 W. Va. 7; *Croston* v. *McVicker,* 76
W. Va. 461; *Clay* v. *White,* 1 Munf. 162; Section 25, Chapter
90 Code.  The verdict of the jury should have been definite.
If they intended to locate the line as claimed by defendants,
after defendants' disclaimer, they should have found for
plaintiffs the land disclaimed, describing it with certainty
with reference to title papers or maps and surveys in evi-
dence, and then have found for defendants the land not dis-
claimed, describing it with the same certainty as would be
required in a declaration in ejectment.  *Pardee* v. *Johnston,*
70 W. Va. 347, 354, and cases cited; Code, chapter 90, sec-
tion 25.  The situation here is not as it was in *Tolley* v.
*Pease,* 72 W. Va. 321, where the defendant disclaimed all
beyond the line M. to E. on the map of the official surveyor.
In that case we held that the general verdict of the jury for
the defendant was in effect to find that the line to which the
disclaimer related was the true division line between the con-
tending parties, and there was something definite upon the
record on which the court might give judgment.  In this case

the disclaimer is not made with reference to any map. There was no. official plat. The disclaimer begins at the point where a white oak stump formerly stood, the point in dispute. The other monuments are a wire fence and two other fences not otherwise described. What is settled?

Plaintiff may have been wrong in not desiring judgment in their favor .for the land disclaimed; but the verdict was clearly defective, as indicated, and may they not have been justified in not desiring a judgment on a general verdict for defendants which did not define the land disclaimed or the land to which the jury believed the defendants were entitled? We think the court should have set it aside, or better, should have given the jury proper direction before discharging them, so as not to have invited a mistrial.

For these reasons the judgment will be reversed, the verdict set aside, and the plaintiffs awarded a new trial.

*Reversed and remanded.*