341 S.E.2d 676

**DANCO, INCORPORATED**

v.

**Rex DONAHUE d/b/a R.E.X., Inc.**

No. 16436.

Supreme Court of Appeals of
West Virginia.

Oct. 17, 1985.

Rehearing Denied April 4, 1986.

Chambers, Chambers & Heilmann and
Robert C. Chambers, Huntington, for appellant.

Frazier & Oxley and Leon Oxley, Huntington, for appellee.

McGRAW, Justice:

The appellant, R.E.X., Inc., appeals from
a final order of the Circuit Court of Cabell
County sustaining a $19,750.11 jury verdict
for the appellee, Danco, Inc., for building
materials purchased in connection with the
construction of a housing development by
Sherwood Estates, Inc. The appellant contends that the trial court erred by failing to
instruct the jury on its theory of the case.
We agree, and therefore must reverse and
remand for a new trial.

In 1976, Rex Donahue formed R.E.X.,
Inc., as a wholly owned corporation for the
purpose of constructing a small shopping
center. On April 11, 1978, Donahue opened
a charge account with Danco, Inc., a local
building materials retailer, under the name
"Rex Donahue, d/b/a R.E.X., Inc." In August 1978, Donahue, along with his brother

and a third individual, formed Sherwood Estates, Inc., for the purpose of constructing a small housing development. For approximately one year following the formation of Sherwood Estates, building materials used in the housing development purchased by Donahue or his agents were charged by Danco to the R.E.X. account, although the bills were paid by checks clearly drawn on a "Sherwood Estates, Inc." account. When Sherwood Estates eventually defaulted on a promissory note secured by a deed of trust on a lot in the subdivision given Danco for the $19,750.11, Danco brought this action against R.E.X., Inc. to recover.

Donahue testified that when he initially went to Danco to purchase building materials for construction of the first house at Sherwood Estates, he was informed by Danco employees that a separate account would be established for Sherwood Estates, Inc., but that in the meantime materials purchased would be charged to the R.E.X. account. Despite approximately fifteen subsequent requests, however, Donahue testified that he was repeatedly rebuffed by Danco employees when he requested that materials purchased be charged to Sherwood Estates. This testimony was corroborated by Burley Horn, a subcontractor at Sherwood Estates, who also testified that when he submitted orders to Danco under the name "Sherwood Estates," Danco employees, after initially searching their records for a Sherwood Estates account card, would simply pull the R.E.X. card and bill the materials to that account. Ben Stanley, Donahue's brother-in-law and supervisor of the Sherwood Estates project, also testified that on several occasions he accompanied Donahue to purchase materials at Danco when Donahue specifically requested that Sherwood Estates, and not R.E.X., Inc., be billed, but that Donahue was informed that there was no account card for Sherwood Estates. Stanley further testified that when he would present orders for building materials for specific lots in Sherwood Estates, Danco employees, after initially searching their records for a Sherwood Estates account card, would pull the R.E.X. card and bill the materials to that account.

In addition to communication with Danco employees concerning the use of the building materials purchased, testimony by Larry Kirk, officer and co-owner of Sherwood Estates, indicated that Danco management was also aware of the identity of the actual purchaser. Kirk, who shared membership on the board of a local bank with Dan Wagoner, chairman of the board at Danco, indicated that he had several discussions with Wagoner concerning his participation in the Sherwood Estates venture. Kirk also related that at one point, Bart Andrews, president and general manager of Danco, telephoned him concerning the past due status of the Sherwood Estates account, and that, as a result of this conversation, a check for approximately thirty thousand dollars, drawn on the Sherwood Estates account, was forwarded as payment. Kirk further testified that, eventually, sufficient funds were unavailable to pay Danco for materials purchased, and that a promissory note secured by a second deed of trust on a lot in the Sherwood Estates subdivision was executed by Kirk and Donahue, as officers of Sherwood Estates, Inc., for the total amount due of $19,750.11. Subsequently, a local bank with a prior deed of trust on the property foreclosed, and the lot was purchased by Kirk and Donahue at the foreclosure sale.

Danco's position, articulated through the testimony of Bart Andrews, was that signed applications were required for all credit accounts, and that no application was ever submitted by Sherwood Estates. Therefore, in Danco's view, R.E.X. remained responsible for debts incurred in the purchase of building materials for the Sherwood Estates development. Furthermore, Andrews testified, receipt of checks drawn on the Sherwood Estates account in payment of amounts owed on the R.E.X. account was not unusual in the construction industry where various parts of an individual project are typically contracted out to different entities. Finally, two Danco salesmen denied Donahue's assertion that they had been requested to charge the materials purchased to Sherwood Estates,

although both admitted that they were fully aware that the materials were being used to build houses on specific lots in Sherwood Estates. One of these salesmen also testified that he was aware of the existence of the corporate entity Sherwood Estates, Inc.

The appellant's theory of its defense was founded upon principles of agency. This theory was embodied in its proposed instruction number two. The appellee argued, however, that the appellant misunderstood its own theory, and that principles of contract, particularly those involving modification, were controlling. The trial court agreed, rejecting the appellant's agency instruction, stating that:

> The Court perceives the evidence to be in a posture as to make it appear that the defendant is alleging that the terms and conditions of the contract initially entered into by himself doing business as REX, Inc. was modified at the time the purchases were made according to his testimony for purposes of construction of Sherwood Estates, Inc.

Therefore, instead of giving appellant's instruction on its theory of the case, that of agency, the trial court gave the appellee's instruction number three, relating to the concept of modification of contract.

■ The law in this area is abundantly clear and unequivocal. As this Court held in Syllabus Point 7 of *State v. Alie*, 82 W.Va. 601, 96 S.E. 1011 (1918), "Where there is competent evidence tending to support a pertinent theory in the case, it is the duty of the trial court to give an instruction presenting such theory when requested so to do." *See also McAllister v. Weirton Hospital Co.*, 173 W.Va. 75, 312 S.E.2d 738, 744 (1983); *Adkins v. Whitten*, 171 W.Va. 106, 297 S.E.2d 881, 884 (1982); Syl. pt. 3, *Blackburn v. Smith*, 164 W.Va. 354, 264 S.E.2d 158 (1980); Syl. pt. 3, *Sayre v. Stevens Excavating Co.*, 163 W.Va. 324, 256 S.E.2d 571 (1979); Syl. pt. 2, *McMillen v. Dettore*, 161 W.Va. 346, 242 S.E.2d 459 (1978); Syl. pt. 8, *Evans v. Farmer*, 148 W.Va. 142, 133 S.E.2d 710 (1963); Syl. pt. 1, *Meadows v. Stickler*, 144 W.Va. 644, 110 S.E.2d 380 (1959); *Ward v. Smith*, 140 W.Va. 791, 817, 86 S.E.2d 539, 553 (1955); *DeLuz v. Board*, 135 W.Va. 806, 810, 65 S.E.2d 201, 203 (1951); Syl. pt. 3, *State v. Foley*, 128 W.Va. 166, 35 S.E.2d 854 (1945); *Adkins v. Raleigh Transit Co.*, 127 W.Va. 131, 138–39, 31 S.E.2d 775, 779 (1944); Syl. pt. 2, *Foster v. Brennan*, 113 W.Va. 122, 166 S.E. 845 (1932); Syl. pt. 4, *Wilson v. McCoy*, 93 W.Va. 667, 117 S.E. 473 (1923); Syl. pt. 8, *Williams v. Schehl*, 84 W.Va. 499, 100 S.E. 280 (1919); Syl. pt. 2, *Morrison v. Fairmont and Clarksburg Traction Co.*, 60 W.Va. 441, 55 S.E. 669 (1906); Syl. pt. 8, *Jordan v. City of Benwood*, 42 W.Va. 312, 26 S.E. 266 (1896); Syl. pt. 3, *State v. Evans*, 33 W.Va. 417, 10 S.E. 792 (1890).

■ It is also well established that the evidentiary threshold that must be crossed in order to justify the giving of a particular instruction which embodies a litigant's theory of the case is exceedingly low. As this Court noted in Syllabus Point 2 of *Snedeker v. Rulong*, 69 W.Va. 223, 71 S.E. 180 (1911), "If there be evidence tending in some appreciable degree to support the theory of proposed instructions, it is not error to give such instructions to the jury, though the evidence be slight, or even insufficient to support a verdict based entirely on such theory." This "slight evidence" test has been applied in a number of our cases dealing with the authority to give instructions embodying a particular theory. *See* Syl., *King v. Bittinger*, 160 W.Va. 129, 231 S.E.2d 239 (1976); Syl. pt. 1, *Skeen v. C & G Corp.*, 155 W.Va. 547, 185 S.E.2d 493 (1971); *Moore v. Burriss*, 132 W.Va. 757, 770, 54 S.E.2d 23, 30 (1949); *State v. Allen*, 131 W.Va. 667, 673, 49 S.E.2d 847, 850 (1948); *Dangerfield v. Akers*, 127 W.Va. 409, 417, 33 S.E.2d 140, 144 (1945); *Skidmore v. Star Ins. Co. of America*, 126 W.Va. 307, 316, 27 S.E.2d 845, 849 (1944); *Myers v. Cook*, 87 W.Va. 265, 269, 104 S.E. 593, 595 (1920); Syl. pt. 5, *Barna v. Gleason Coal & Coke Co.*, 83 W.Va. 216, 98 S.E. 158 (1919); *Roberts v. Baltimore & Ohio R. Co.*, 72 W.Va. 370, 376, 78 S.E. 357, 360 (1913); Syl. pt. 6, *Lyons v. Fairmont Real Estate Co.*, 71 W.Va. 754, 77 S.E. 525 (1913); Syl. pt. 4, *Jones v. Riverside Bridge Co.*, 70 W.Va. 374, 73 S.E. 942 (1912); *State v. Clifford*, 59 W.Va. 1, 18, 52

**60**

S.E. 981, 989 (1906), *overruled on other grounds*, Syl. pt. 4, *State v. Lawson*, 128 W.Va. 136, 36 S.E.2d 26 (1945); Syl. pt. 5, *McDonald v. Cole*, 46 W.Va. 186, 32 S.E. 1033 (1899).

 In addition to the foregoing considerations, and of particular relevance to the instant proceeding, this Court has long held that, "Where conflicting theories of a case are presented by the evidence, each party is entitled to have his view of the case presented to the jury by proper instructions." Syl., *Morris v. Parris*, 110 W.Va. 102, 157 S.E. 40 (1931), *quoting, Whitmore v. Rodes*, 103 W.Va. 301, 303, 137 S.E. 747, 748 (1933); *see also Slater v. United Fuel Gas Co.*, 126 W.Va. 127, 133, 27 S.E.2d 436, 439 (1943); Syl., *Becher v. Spencer*, 114 W.Va. 75, 170 S.E. 900 (1933); Syl. pt. 3, *Palmer v. Magers*, 85 W.Va. 415, 102 S.E. 100 (1920); Syl. pt. 1, *Angrist v. Burk*, 77 W.Va. 192, 87 S.E. 74 (1915), *overruled on other grounds*, Syl. pt. 6, *State v. Bragg*, 140 W.Va. 585, 87 S.E.2d 689 (1955); Syl. pt. 5, *Shires v. Boggess*, 72 W.Va. 109, 77 S.E. 542 (1913); Syl. pt. 4, *Stanton v. City of Parkersburg*, 66 W.Va. 393, 66 S.E. 514 (1909); Syl. pt. 14, *State v. Clark*, 64 W.Va. 625, 63 S.E. 402 (1908); Syl. pt. 7, *Delmar Oil Co. v. Bartlett*, 62 W.Va. 700, 59 S.E. 634 (1907); Syl. pt. 2, *Webb v. Big Kanawha & O.R. Packet Co.*, 43 W.Va. 800, 29 S.E. 519 (1897).

 Without passing upon the correctness of the agency instruction offered or the ultimate issue of liability, we hold that sufficient evidence was presented to impose a duty on the trial court to instruct the jury on principles of agency. As this Court observed more than one hundred years ago, "If there is any evidence before the jury tending to prove a case supposed in an instruction asked for, and the instruction propounds the law correctly, it should be given. ... In such a case, it is best and safest to give the instruction." *State v. Betsall*, 11 W.Va. 703, 729 (1877), *overruled on other grounds*, Syl. pt. 1, *State v. Humphreys*, 128 W.Va. 370, 36 S.E.2d 469 (1945). It is difficult to imagine a situation where proper instructions to a jury on a theory supported by competent evidence would result in reversible error. On the other hand, refusing to instruct the jury on a litigant's theory of the case when it is supported by competent evidence prevents consideration of that theory by the jury, and thus invites reversal.

For the foregoing reasons, the judgment of the Circuit Court of Cabell County is reversed and the case remanded for a new trial.

Reversed and remanded.