504 S.E.2d 188

**Richard Lewis SKIBO, Appellee,**

v.

**The SHAMROCK COMPANY, LTD., A Corporation, and Pat Mascaro, Individually, Appellant.**

**No. 24138.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 20, 1998.

Decided June 24, 1998.

362

H. Truman Chafin, Williamson, for Appellee.

Ross Maruka, Fairmont, for Appellants.

PER CURIAM: [1]

The Shamrock Company, Ltd., and Pat Mascaro (Shamrock and Mascaro will hereinafter be collectively referenced as "Appellant" or "Mr. Mascaro/Shamrock") appeal a decision of the Circuit Court of Marion County in a personal injury action filed by the

---

**1.** We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992).

Appellee, Richard Lewis Skibo. Shamrock alleges instructional error, improper statements by Mr. Skibo's counsel, and excessiveness of the verdict. We affirm.

## I.

On September 17, 1993, Mr. Pat Mascaro, vice-president of Shamrock, allegedly struck Richard Skibo, a twenty-year-old Fairmont State College student, with a pool cue causing injury to Mr. Skibo. The incident occurred at the Varsity II Club in Fairmont, West Virginia, an establishment allegedly owned by Mr. Mascaro and/or his wife.[2] An altercation between Mr. Mascaro and Mr. Mitchell Halloran, a roommate of Mr. Skibo, occurred following a disagreement regarding entitlement to the use of a pool table. Mr. Halloran testified that Mr. Mascaro struck him with a pool stick and the bouncers thereafter pushed Mr. Halloran back into his seat at a booth. According to the testimony at trial, Mr. Skibo had been sitting in the booth during the altercation between Mr. Mascaro and Mr. Halloran. Mr. Skibo and Mr. Halloran testified that Mr. Mascaro, being unable to strike Mr. Halloran again due to the position of the bouncers, turned and hit Mr. Skibo who was still in a seated position at the booth.

The impact of the pool stick caused a cut on Mr. Skibo's head which allegedly extended from his hairline to his eyebrow and was split open about an inch, according to the testimony of Mr. Halloran. Mr. Halloran and Mr. Skibo were then ejected from the bar, and one of the bouncers sprayed Mr. Halloran with mace. Police arriving at the scene transported Mr. Skibo to Fairmont General Hospital for treatment.

On July 27, 1994, Mr. Skibo filed a complaint against the Appellant. During the September 5, 1996, trial, Mr. Skibo presented neither witnesses from the hospital nor medical bills. He did testify that he incurred $1859 in medical bills, and the medical records were introduced into evidence. Mr. Skibo testified regarding the altercation, the injury, and his inability to continue in classes as Fairmont State College. He also ex-

plained the pain and suffering he experienced and the anguish regarding the potential of losing vision in the injured eye. Mr. Skibo's mother, Mrs. Brenda Skibo, testified regarding the hospitalization and the extent of Mr. Skibo's injuries. Mr. Mitchell Halloran also testified regarding the altercation and Mr. Skibo's injuries.

Mr. Mascaro/Shamrock presented the testimony of individuals present during the altercation refuting the testimony of Mr. Skibo and Mr. Halloran. At the conclusion of the evidence, the jury found in favor of Mr. Skibo and awarded him $50,000. On September 10, 1996, the lower court entered its judgment of $50,000, in accordance with the jury verdict. Mr. Mascaro/Shamrock moved for post-judgment relief, requesting the lower court to set aside the verdict and judgment and to grant a new trial. Mr. Skibo filed a timely response to the motion, and the lower court entered an order on October 21, 1996, denying post-judgment motions by Mr. Mascaro/Shamrock. On February 18, 1997, Mr. Mascaro/Shamrock filed a petition for appeal with this Court. Mr. Mascaro/Shamrock alleges three specific errors: (1) inappropriateness of certain instructions provided to the jury, (2) allegedly prejudicial statements made by Mr. Skibo's attorney during closing argument, and (3) the excessiveness of the $50,000 verdict.

## II.

### INSTRUCTIONS

The lower court, despite Mr. Mascaro/Shamrock's objection, instructed the jury that it could consider the cost, if any, of Mr. Skibo's reasonable and necessary medical bills. The court also instructed the jury, despite Mr. Mascaro/Shamrock's objection, that it could consider the permanency of any injuries to Mr. Skibo. Mr. Mascaro/Shamrock maintains that the lower court erred in providing such instructions to the jury because neither the medical costs not the permanency of the injuries were properly delineated at trial and were not supported by adequate evidence. Although no medical

---

**2.** Mr. Mascaro denied owning the business but admitted that he was the manager. Testimony

revealed that Mr. Mascaro's wife, Tina, actually owns the building in which the bar is housed.

witnesses were presented and no medical bills were placed in evidence, Mr. Skibo testified that he incurred $1859 in medical bills, and the medical records were in evidence.[3]

In syllabus point three of *Craighead v. Norfolk and Western Ry. Co.,* 197 W.Va. 271, 475 S.E.2d 363 (1996), this Court explained as follows:

" ' "If there be evidence tending in some appreciable degree to support the theory of proposed instructions, it is not error to give such instructions to the jury, though the evidence be slight, or even insufficient to support a verdict based entirely on such theory." Syllabus Point 2, *Snedeker v. Rulong,* 69 W.Va. 223, 71 S.E. 180 (1911).' Syllabus Point 4, *Catlett v. MacQueen,* 180 W.Va. 6, 375 S.E.2d 184 (1988)." Syllabus point 6, *Wilt v. Buracker,* 191 W.Va. 39, 443 S.E.2d 196 (1993), cert. denied, 511 U.S. 1129, 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994).

In syllabus point seven of *State v. Morris,* 142 W.Va. 303, 95 S.E.2d 401 (1956), we specified that "[i]t is error to give instructions to the jury, even though they state correct propositions of law, when there is no evidence to support some of the hypotheses which they contain." In expounding upon these requirements for an evidentiary foundation for jury instructions, we explained in *Danco, Inc. v. Donahue,* 176 W.Va. 57, 341 S.E.2d 676 (1985), that "[i]t is ... well established that the evidentiary threshold that must be crossed in order to justify the giving of a particular instruction which embodies a litigant's theory of the case is exceedingly low." 176 W.Va. at 59, 341 S.E.2d at 678.

In the present case, Mr. Skibo presented evidence in the form of medical records and testimony regarding the degree of injury suffered, the medical expenses in-

volved, and the permanency of his injuries. As expressed in syllabus point six of *Voelker v. Frederick Business Properties,* 195 W.Va. 246, 465 S.E.2d 246 (1995), this Court reviews the giving of jury instructions under an abuse of discretion standard.

"The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties." Syl. pt. 6, *Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995).

We therefore conclude that the jury instructions were properly supplied to the jury, and we discern no abuse of discretion in this regard.

## III.

## CLOSING ARGUMENT

During closing argument, Mr. Skibo's attorney informed the jury as follows: "If you're going to make him [Mr. Mascaro] pay the price for what he did and send—send a message—to this community, you have to give a verdict big enough so the State...." Mr. Mascaro's attorney interrupted this statement with an objection, the parties were called to the bench, and Mr. Skibo's attorney then abandoned that line of argument. No curative instructions were requested or given. Mr. Mascaro/Shamrock alleges that this statement persuaded the jury that it had the power to punish Mr. Mascaro/Shamrock despite the lower court's determination that punitives were inappropriate.[4]

---

3. Mr. Skibo maintains that the fact that medical bills were not introduced into evidence may affect the weight of the evidence, but not the admissibility. Mr. Skibo testified regarding the amount of his bills, and the medical records were in evidence.

4. Mr. Skibo's attorney also informed the jury during closing arguments that Mr. Mascaro had apparently transferred assets to his wife, even though there was no evidence of such transac-

tions. Mr. Mascaro/Shamrock's attorney interrupted that statement, saying, "If the Court, please, Your Honor. There is no evidence of that in this case at all, that he transferred anything over to her." Counsel disagreed regarding the evidence, and counsel were asked to approach the bench. After the bench conference, Mr. Skibo's counsel apologized, and the lower court sustained the objection, advising the jury to disregard the statement.

Mr. Skibo maintains that the statement was not improper, and further emphasizes that Mr. Mascaro's attorney failed to request the court to instruct the jury to disregard the statement. In syllabus point one of *Black v. Peerless Elite Laundry Co.*, 113 W.Va. 828, 169 S.E. 447 (1933), we explained that " '[t]his court will not consider errors predicated upon the abuse of counsel of the privilege of argument, unless it appears that the complaining party asked for and was refused an instruction to the jury to disregard the improper remarks, and duly excepted to such refusal.' *McCullough v. Clark*, 88 W.Va. 22, 106 S.E. 61, pt. 6, syl." *See also Pasquale v. Ohio Power Co.*, 187 W.Va. 292, 418 S.E.2d 738 (1992).

We stated in syllabus point two of *State v. Kennedy*, 162 W.Va. 244, 249 S.E.2d 188 (1978) that "[g]reat latitude is allowed counsel in argument of cases, but counsel must keep within the evidence, not make statements calculated to inflame, prejudice or mislead the jury, nor permit or encourage witnesses to make remarks which would have a tendency to inflame, prejudice or mislead the jury." In *Mackey v. Irisari* 191 W.Va. 355, 445 S.E.2d 742 (1994), the jury had been instructed that no more than $1,000,000.00 for noneconomic loss could be awarded, pursuant to statute. *Id.* at 365, 445 S.E.2d at 752. Counsel for the plaintiff then remarked regarding the legislature's wisdom in adopting the $1,000,000.00 limitation. In our analysis of counsel remarks, this Court found that although the "remark may not have been appropriate, it did not inflame or prejudice the jury to the extent which would mandate reversal." *Id.*

In the present case, we have reviewed the closing arguments of both counsel, and we determine that the statements by Mr. Skibo's counsel regarding sending a message and the status of Mr. Mascaro's wife's property holdings do not warrant reversal.

## IV.

### EXCESSIVENESS OF VERDICT

Mr. Mascaro/Shamrock asserts that the award of $50,000 to Mr. Skibo was based upon passion against Mr. Mascaro/Shamrock and is excessive. Mr. Mascaro/Shamrock asserts that the jury was influenced by passion, partiality, corruption, or entertained a mistaken view of the case. Mr. Skibo responds by asserting that the verdict was not excessive and reflected the jury's understanding that Mr. Skibo suffered a severe head wound, a scar, fear of losing his sight, pain and suffering, and a skull fracture. Our precedent in the arena of excessiveness is extremely distinct; we have consistently held as follows:

> " 'Courts must not set aside jury verdicts as excessive unless they are monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous, and manifestly show jury passion, partiality, prejudice or corruption.' Syl.Pt., *Addair v. Majestic Petroleum Co., Inc.*, 160 W.Va. 105, 232 S.E.2d 821 (1977)." Syl. pt. 5, *Roberts v. Stevens Clinic Hosp. Inc.*, 176 W.Va. 492, 345 S.E.2d 791 (1986).

Syl. Pt. 2, *Capper v. Gates*, 193 W.Va. 9, 454 S.E.2d 54 (1994).

Based upon our review of the record and the arguments of counsel, we discern no justification for diverging from the determination of the jury. We therefore affirm its decision.

Affirmed.

DAVIS, C.J., deeming herself disqualified, did not participate in the decision in this case.