418                     WHITE *v.* WARD.

AFFIRMED.

# CHARLESTON.

WHITE *et. ux. v.* WARD.

Submitted September 5, 1891.—Decided December 7, 1891.

1. POSSESSION—DEED—VENDOR AND VENDEE.
   The deed of·a vendee, in the absence of fraud or mistake, gives
   him constructive possession of all the territory within its limits,
   and a subsequent deed by the vendor, although it might cover a
   part of the territory first sold, would not interfere with such con-
   structive possession of the first vendee.

2. POSSESSION—MISTAKE—DEED.
   The acquiescence or admission of the owner of land, made un-
   der a mistake as to his rights, should neither estop nor prejudice
   him from subsequently enlarging his possession to the limits of
   his deed, provided no actual adversary possession has intervened
   to defeat his title.

3. NEW TRIAL.
   Newly-discovered evidence, if cumulative merely, will not be
   sufficient to authorize the court, as ground for a new trial, to dis-
   turb the verdict of the jury.

*Kee, Talbott & Poundstone* for plaintiffs in error.

*L. D. Strader* for defendant in error, cited 8 W. Va. 406,
433 *et seq.*

LUCAS, PRESIDENT :

This was an action of ejectment, instituted by La-
fayette White and Mary, his wife, against John W.
Ward, in the Circuit Court of Randolph county. The
controversy turned entirely upon a question of fact as to

the location of the boundary line between the land of the plaintiff and that of the defendant.    There was no question of title involved, it being admitted, as is certified by the court, that plaintiff's and defendant derived title from a common source, except as to a small portion of the land in the declaration described, not affecting this controversy, which is principally confined to a question as to the true location of the northern boundary of the tract of land sold to the defendant by one John B. Morrison by contract in writing dated November 9, 1870, and subsequently conveyed to said defendant by deed bearing date January 27, 1871.

It appears that said Morrison, at the date of the contract and deed, owned the lands on both sides of the disputed line, and in the deed and contract he used the following language: "Thence a straight line to a stake at the foot of said ridge in a line of a survey of a tract of land sold by Samuel Morrison, Sr., to Thos. and Samuel Morrison, Jr., bearing date Nov. 1849; thence with said line S., 56° E., —— poles to a stake on the eastern line of the Bank's survey."    It was this line, described in the quotation above, that was the matter of controversy, and its correct location was the main fact submitted to the consideration of the jury, who found a verdict for the defendant. There was a disclaimer by the defendant as to part of the land claimed in the declaration.    A number of deeds, no less than eight, were read to the jury, and an order of survey was made, and the report of the county surveyor, with his plat or map, was submitted, together with the testimony of many witnesses.    After the verdict of the jury, a motion for a new trial was made upon the ground that the verdict was contrary to the evidence, and on the ground of newly-discovered evidence.    This motion the court subsequently overruled, and gave judgment, to which action of the court a bill of exceptions was filed.

It is quite manifest from the above statement of the case, that we have only to do with questions of *fact*, as no instructions appear in the record, nor were any exceptions reserved during the trial.    The question of fact involved is the somewhat complicated one respecting a disputed

boundary line, and the area involved embraces one hundred and forty nine and a half acres of mountain-land. Were it not for the cardinal principle in relation to conflicting evidence on a motion for a new trial, we might find ourselves involved in a labyrinth of contradictory testimony, with no key by which to extricate ourselves, for the map which is sent up, examined without the benefit of oral explanation, is well-nigh unintelligible.

The deed to the defendant from J. B. Morrison, through whom both parties claim, bears date in January, 1871, and is three years older than Morrison's deed to Wamsley, under whom the plaintiffs claim. The deed to the defendant contains several blanks, both as to course and distance. The defendant's vendor, J. B. Morrison, was to have had the land surveyed, the lines properly run, and boundaries properly marked. This he neglected entirely to do, and the defendant himself, after waiting many years, had a survey made by the former county surveyor, Nicholas Marstiller. The testimony of the latter strongly tended to establish the boundary line from "X" to "Y," as marked on the county surveyor's plat, filed in the cause, as contended for by the defendant; and this proof was directed not only to finding the lines of coterminous owners as called for by the deed of the defendant, but also to the identification of ancient landmarks, such as marked trees, along the boundary line indicated. Applying the rule which this Court has so frequently laid down, that where the evidence, and not the facts proved, is certified, this court will reject all the parol evidence of the party moving for a new trial which conflicts with that of his adversary, the testimony of this old survey alone would sustain the verdict of the jury, and would forbid our setting it aside. But, in addition to this, the other coterminous owners whose lines are called for in the deed of the defendant, Yokum and Riggleman, both testify in favor of the line which the defendant sought to establish.

It would be very unprofitable to enter into any discussion of lines, courses, and distances. Suffice it to say that there was considerable evidence which tended to establish the said line from " X " to " Y " as the proper boundary

line of the defendant as called for by his deed. It is very true, a different and erroneous line may have been pointed out to the defendant by his vendor at or about the time of the sale. Nevertheless, his deed would govern, and, in the absence of all fraud or mistake, would give him constructive possession of all the territory within its limits. Neither would the subsequent deed of the plaintiffs, though it might cover a part of the territory so sold to the defendant, interfere with the constructive possession. If, indeed, it should be proved that the plaintiffs, as adverse claimants, had taken actual possession in good faith of the disputed territory, and had held the same for a period of ten years, such possession would have ripened into a good title, and would have enabled them to maintain their action of ejectment. *Western Min. & Manuf'g Co.* v. *Peytona C. C. Co.*, 8 W. Va. 407, p'ts 10–13 of Syll.; *Brewer* v. *Railroad Co.*, 5 Metc. (Mass.) 478; Hutch. Land Titles, § 412. But all the evidence, including that of the plaintiffs' agent and vendor, distinctly negatives any such adverse possession for the statutory period named.

It is contended, however, that the admission and acquiescence of the defendant for a long period of time estop him from claiming the disputed territory. This contention is met by the evidence that the defendant labored under a *bona fide* mistake as to his proper boundary as defined by his deed, and, in the absence of actual adversary possession, such acquiescence, should neither estop nor prejudice the defendant, when, upon discovering his mistake, he enclosed or otherwise took actual possession of the disputed territory.

It is also contended on behalf of the plaintiffs that the defendant admitted to them that the true boundary line was practically that for which they now contend. Had this admission been made to them *prior* to their purchase, and have operated as an inducement thereto, the defendant might have been estopped; but it will be observed that these admissions were made, according to the testimony of both plaintiffs and defendant, as late as 1877, about one year after their purchase had been completed. It could not, therefore, have conduced to the purchase, nor in any

manner have worked an estoppel.   Bigelow, Estop. 594, 595.

It remains now only to consider the affidavits introduced of newly-discovered evidence as the ground for a new trial.   Upon inspection of these affidavits, it will be quite apparent that this evidence is merely cumulative, and therefore ought not to have been entertained as the basis upon which to sustain a motion for a new trial.   It would appear, moreover, that one of these witnesses—Riley Pritt—lived in the immediate neighborhood, was a justice of the peace in 1874, when J. B. Morrison conveyed to Wamsley, and that his initials, "R. P.," were inscribed upon some of the ancient trees claimed to be monuments in the boundaries.   This fact at least ought to have put the plaintiffs or their agent and vendor upon inquiry before the conclusion of the trial.   The second witness—George W. Loyd—accompanied Pritt when his initials were cut upon the monumental beech tree, and an interview with the latter would no doubt have led to a discovery of the alleged knowledge of the former.

Upon the whole, therefore, we do not think that this Court ought, in the circumstances, and on the well-recognized principles of law and practice, to interfere with the verdict of the jury or the judgment of the Circuit Court; and the same is therefore affirmed.

AFFIRMED.