# CHARLESTON.

## MILLER v. HOLT.

### Submitted June 17, 1899—Decided November 18, 1899.

1. EJECTMENT—*Description—Verdict.*
   Where the plaintiff in ejectment, in describing the land claimed by him in his declaration, sets forth the metes and bounds, and one of the calls is "thence N., 2 W., 490 poles, to a stake in a line of B. W.'s 750 acres," and said line, when ascertained, constitutes the division line between plaintiff's and defendant's land, the true location of which is the real controversy in the suit, the, jury, by its verdict, must find the true location and a verdict and judgment thereon, which merely finds for the plaintiff the land as described in the declaration, does not determine the question raised by the pleadings. (p. 11.)

2. BOUNDARIES.
   Before the plaintiff can recover, he must identify the land claimed, so far as the exterior boundaries are concerned. (p. 12.)

3. DESCRIPTION.
   The call for the line of another tract of land, which is proved, is more certain than, and shall be followed in preference of, one for mere course and distance. (p. 13.)

Error to circuit court Ritchie County.

Action by D. H. Miller against W. B. Holt. Judgment for plaintiff, and defendant brings error.

*Reversed.*

B. F. AYERS and BROWN, JACKSON & KNGHT, for plaintiff in error.

W. N. MILLER, for defendant in error.

ENGLISH, JUDGE:

This is an action of ejectment brought by D. H. Miller against W. B. Holt, in Ritchie County, for the recovery of three tracts of land, described in the declaration as tract No. 1, containing four hundred and thirty acres; No. 2, five hundred acres; No. 3, five hundred acres; in all, one thousand four hundred and thirty acres,—being part of a two thousand acre tract patented to James Newport and others, trustees of Isaac Sidman, by patent dated April 18, 1786, then in Harrison County, beginning at a beech and pointers in an original corner of said two thousand acres and No. 6; running thence N. 88 E., 400 poles, crossing the waters of Little Leading creek, to an ironwood and pointers in another original corner of said two thousand acre tract; thence N., 2 W., four hundred and ninety poles, to a stake in a line of Benjamin Webb's seven hundred and fifty acres; then with his line and a line of Dennis Dye's one hundred and fifty acres, N., 71 W. three hundred and eighty poles, to a white oak, said Dye's corner; thence, with two of his lines, N. one hundred and fifty-five poles, to a white oak; thence S., 888 W., forty-five poles, to a stake in another line of said two thousand acres; and thence, with said line, S., 2 E., seven hundred and sixty poles, to the beginning,—excepting from the above boundary four hundred acres conveyed to R. E. Taylor and B. F. Prince by the clerk of the county court by deed bearing date August 25, 1881, recorded in Deed Book No. 22, pp. 131-133, of the land records of Ritchie county, containing one thousand and thirty acres. The defendant demurred to the declaration at rules, but did not insist upon it in argument. The plea of not guilty was interposed, and issue joined thereon. The case was submitted to a jury. The defendant demurred to the plaintiff's evidence. The jury found a con-

ditional verdict for the plaintiff, if the law be for the plaintiff; that he recover from the defendant the possession of the land in his declaration specified, and that he is entitled to the same in fee simple; and also found the excepted boundary of the four hundred acre tract conveyed to Taylor and Prince by the clerk of the county court, as aforesaid, giving the bounds and description thereof by reference to the plat returned under the order of survey, but, if the law be for the defendant, then they found for him. There was a joinder in the demurrer, and subsequently the court found the law to be with the plaintiff upon the demurrer to the evidence, and entered judgment for the plaintiff on the conditional verdict, and from this jugdment the defendant obtained this writ of error.

The first assignment of error relied on by the defendant relates to the action of the court in permitting the deed from Peter Van Winkle to William Henry Titus, of July 6, 1846 to be read in evidence over the objection of the defendant. This deed purports in the body of it to have been executed by Van Winkle, commissioner of delinquent and forfeited lands, and the signature should correspond with the rest of the deed, but is simply signed, "P. G. Van Winkle," without any addition or description. Now, it appears that the record of the chancery proceedings authorizing Van Winkle, as commissioner, to advertise and sell Isaac Sidman's survey No. 7, containing one thousand four hundred and thirty acres, describing it as part of two thousand acres patented to James Newport and others, attorneys in fact and trustees of Sidman, giving the metes and bounds of said one thousand four hundred and thirty acres, was offered in connection with said deed of Van Winkle; that on the face of the deed he recites his proceedings in reference to the sale of said land under the decree to William Henry Titus, and concludes the deed as follows: "In testimony whereof I, the undersigned commissioner, have hereunto set my hand and seal this sixth day of July, in the year 1846. [Signed] P. G. Van Winkle. [Seal.];" and two justices certify that he acknoweldged it as commissioner of delinquent and forfeited lands for Ritchie County. In the circumstances, we can but regard this deed as executed as commissioner, and not his individual deed.

The plaintiff next offered in evidence a deed from said Titus to John D. Clute, dated October 22, 1846; a deed from said Clute to Jacob F. Merrett, dated February 18, 1865; and a deed from said Merrett to the New York & Hughes River Oil Company.

As to the deed from Clute to Merrett, it is claimed there should have been a seal attached, as required by sections 14 and 15 of chapter 51 of the Code of 1868. In the certificate of acknowledgment to this deed, John Adriance, who took the acknowledgment, recites that he is a commissioner appointed by the governor of West Virginia for the state of New York, and concludes the certificate, "Given under my hand and seal of office," and signs it, "John Adriance, West Virginia, Commissioner," and the word "Seal" is written to the left; and in the certificate from Merrett to the New York & Hughes River Oil Company John Adriance took the acknowledgment, reciting the same, but certifies it under his hand and seal as notary public. The circuit court committed no error in overruling the objections to the admission of these deeds, as in the first we would presume the proper seal was affixed, and in the latter the certificate is good whether in taking it the officer acted as commissioner or notary public, and the same presumption would arise as to the seal as in the first-mentioned deed. In the case of *Sumner* v. *Mitchell*, (Fla.; Jan. 20, 1892) reported in 14 L. R. A. 815, Syl., point 7 (s. c. 10 South. 562), it is held that, "where the title of an officer taking an acknowledgment of a deed is written out in full in the body of the certificate, its omission from the signature is immaterial, and affixing it to the signature is itself sufficient. Initials may, however, be used, and are sufficient to designate such title." See also, Devl. Deeds, § 501.

It is claimed, also, that the court erred in permitting the deed from the New York & Hughes River Oil Company to W. A. McCosh to be read in evidence to the jury, because there is no allegation in the deed of the fact that said company is a corporation existing under the laws of West Virginia or of the United States. This I regard as unnecessary. It appears on the face of the deed that it is a corporation, and that the annual meeting of the stockholders it passed a resolution authorizing its property, real and

personal, to be conveyed under the common seal thereof, by deed duly executed and acknowledged by the president and secretary of the board of trustees, and it seems to have been signed and acknowledged as the law then required.

It is also objected that the deed from McCosh to Miller was improperly admitted—First, because the grantor had no title to convey; second, because of erasures and interlineations on the face of the deed; and, third, it did not relate to the land in controversy. As to the first objection, it is not tenable, if we are correct in what we have said as to the former conveyances; as to erasures and interlineations, if the deed is legible, we cannot see that its validity is thereby affected; and, as to its not relating to the land in controversy, the description is the same as in the former deeds.

The plaintiff also offered in evidence a certified copy of a deed from C. T. Caldwell, special commissioner, to W. D. Miller, for this land, and in connection therewith the record and proceedings in the chancery cause of Allen Hay against the New York & Hughes River Oil Company and others, in which a decree was rendered authorizing said Caldwell to execute a deed for said land on behalf of said company to said Miller, and in connection therewith the copy of the deed was improperly admitted in evidence.

The plaintiff in error claims that the court erred in overruling the motion to set aside the verdict, and grant him a new trial, on the ground that the same is contrary to the law and the evidence, because the jury had no right to insert in their verdict the description of the Prince and Taylor four hundred acres. They should have found simply a general verdict, and referred it to the court to fix on the surveyor's plat filed in the cause the excepted boundary.

The plaintiff further claims that the verdict should be set aside because the plaintiff did not identify the land claimed in his declaration. Looking at the map returned by the surveyor in this case, and reading the evidence relative thereto indicate that one of the main controversies was as to the proper location of the Webb line; one of the calls in the description of plaintiff's land, as set forth in his declaration, being, thence N., 2 W. four hundred and ninety poles, to a stake in a line of Benjamin Webb's seven hundred and fifty acres." The beginning corner of the

plaintiffs' land appears to have been identified as at B on the surveyors' map, and a well-marked line is found running with the first call, counting forty-nine years running E., three hundred and sixty-eight poles, to the point marked "M" on the map. The defendant claims that to be the S. E. corner of the survey, while the plaintiff claims the corner to be thirty-two poles further east, at the point marked "A". No marking, however, is found east of the point M. The next call of plaintiff's description of said land is, "thence N., 2 W., four hundred and ninety poles, to a stake in a line of Benj. Webb's seven hundred and fifty acres." Running this call from M, N. four hundred and ninety poles, the surveyor found a well-marked line, counting forty-nine years, while, running the same course from the point A, no marks indicating a line were found. Here then was a disagreement as to the location of this Webb line. No evidence, documentary or otherwise, was offered to show that said Webb was the owner of any seven hundred and fifty acre tract in the neighborhood. The defendant claimed this line at one place, and the plaintiff at another, and it is very material to the proper solution of this case that this line should be definitely fixed; but, instead of doing so, the court gave judgment upon the verdict of the jury, the land being described as in the verdict, and following the description given by the plaintiff in his declaration, and settled nothing as to the proper location and boundary of the land, which was necessary to entitle the plaintiff to recover, and was the main question over which the contest was made. In the case of *Coal Co. v. Howell*, 36 W. Va. 490, (15 S. E. 214), this Court held that, "before the plaintiff can recover, he must identify the land claimed, so far as the exterior boundaries are concerned." The necessity of fixing the proper location of the Webb line is apparent, when attention is called to the fact that, after reaching that line, the next call is, "then, with his line and a line of Dennis Dye's 150 acres, N., 71 W., 380 poles, to a white oak, said Dye's corner." The plaintiff, Miller, by his declaration, claims that the defendant, Holt, unlawfully withholds from him the possession of the land therein described. To show this, it is incumbent on him to locate his boundaries, and show that the defendant is claiming to hold possession with them. Hutchinson, in his valuable work on

Land Titles (page 287), says:" A line of an old survey or, adjoining tract, called for in the deed, controls, unless in conflict with some natural object,"—citing *Pennington* v. *Bordley*, 4 Ha. & J. 450; *Howell* v. *Merrill*, 30 Mich. 283. See also *Campbell* v. *Branch*, 49 N. C. 313, in which the court in its opinion says: "It is equally well settled that the call for the line of another tract of land, which is proved is more certain than, and shall be followed in preference to, one for mere course and distance,"—citing *Carson* v. *Burnett*, 18 N. C. 546. In *Pennington* v. *Bordley, supra*, this Court held that a tree called for is not more certain than a line of a tract of land. "They are to be rendered certain by proof, and can be identified in no other way. A tree, being a natural and visible object, is not more capable of proof than a line." The location of this Webb line was necessary, in order to determine whether the defendant was guilty of unlawfully withholding the premises in the declaration mentioned. It may be, and perhaps was, a question of fact for the jury; but the jury, by its verdict, failed to respond to the question, and the court, by following the verdict, did not determine the controversy raised by the pleadings. The judgment must be reversed, the verdict set aside, and a new trial awarded.

*Reversed.*