# CHARLESTON.

John Wilson *et als. v.* C. M. Caldwell.

(No. 5199.)

Submitted March 17, 1925.　　　　Decided April 7, 1925.

1.　Ejectment—*If Defendant Claims Only Part of Land Sued For, He Should Disclaim all Land Beyond Lines to Which He Claims.*

　Under our practice, where the defendant makes no claim as to part of the land sued for but does assert ownership in the balance, if he would limit the issue and avoid error in the general verdict, he should, by disclaimer filed in due time, disclaim all the land beyond the line or lines to which he claims. (p. 666).

　(Ejectment, 19 C. J. § 130.)

2.　Same—*Defendant May, any Time Before Verdict, by Leave of Court, Withdraw Plea of Not Guilty and Disclaim as to Whole or Part of Land.*

　But notwithstanding this general rule of practice, a defendant in ejectment may at any time before verdict, by leave of the court, withdraw his plea of not guilty and put

in his disclaimer to the whole or a part; of the land sued for and be relieved of the costs thereafter incurred respecting the land disclaimed. (p. 666).

(Ejectment, 19 C. J. §§ 130, 348.)

3. SAME—*On Partial Disclaimer by Defendant at end of Evidence, General Verdict for Defendant Should Not be Received; on disclaimer by Defendant of Part of Land, Verdict Should Describe Land to Which Each Party is Entitled by Metes and Bounds.*

In the trial of an action of ejectment, where the defendant at the conclusion of the evidence read into the record a purported disclaimer to a part of the land sued for, treated by the court as a disclaimer, a general verdict for the defendant should not be received; there should be a verdict for the plaintiff clearly describing by metes and bounds the land disclaimed or recovered; and for the defendant the part of the land not disclaimed, clearly describing the land to which each is entitled, so as to fully settle all the questions in issue and submitted to the jury, otherwise the judgment should be reversed, the verdict set aside, and a new trial awarded. (p. 667).

(Ejectment, 19 C. J. § 287.)

4. TRIAL—*Instruction Purporting to Apply to Entire Case Should be Predicated Upon all Material Facts Proved or Tended to be Proved.*

The rule is that an instruction which purports to apply to the entire case should be predicated upon all the material facts, which the evidence proves or tends to prove. (p. 670.)

LIVELY and HATCHER, JUDGES, absent.

(Trial, 38 Cyc. p. 1629.)

(NOTE :—Parenthetical references by Editors. C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Kanawha County.

Action by John Wilson and others against C. M. Caldwell. Judgment for defendant, and plaintiffs bring error.

*Reversed and remanded.*

*Poffenbarger, Blue & Dayton* and *J. Howard Hundley,* for plaintiffs in error.

*Mathews, Campbell & McClintic,* for defendants in error.

Woods, Judge:

John Wilson, Fred Wilson and Gus Wilson, plaintiffs in error, instituted their action in ejectment in the Circuit Court of Kanawha County, to recover possession of a tract of about 117.5 acres of land, situate and lying along the Kanawha River just below the mouth of Tyler Creek, in Union District, said County, said tract having an average length of 260 rods and an average width of 72 rods. A part of this tract of land is now in possession of the defendant, C. M. Caldwell. The plaintiffs' title is derived from the Commonwealth and is a part of a tract of six hundred acres surveyed for Andrew Donnally, and patented to Reuben Slaughter. Out of the six hundred acre patent, Reuben Slaughter conveyed a tract of 182 acres to Allen Baxter, which included plaintiffs' boundary of land and 82 acres additional lying Northeast of Tyler Creek adjoining the plaintiffs' land. Allen Baxter conveyed a tract of land described as 130 acres, to David Corbin. Corbin conveyed said tract to James Staten, who in turn conveyed said tract, described as 101 acres to George Wilson. George Wilson devised this tract of land, known as the "Home Place" to Alnitia Wilson, one of his sons. Alnitia Wilson, who was the father of the plaintiffs John and Fred Wilson, and grandfather of the other plaintiff, Gus Wilson, died intestate, and the lands in controversy were inherited by these plaintiffs, except an undivided interest inherited by C. C. Wilson, a brother of the plaintiff Gus Wilson, who conveyed said interest to said John and Fred Wilson. The declaration included certain outsales adjoining each other, said out-sales bordering on the Kanawha River, and forming a strip of land, aggregating 19.8 acres, between said river and line "5B-14B", hereinafter set out as the Southeast line of the property now claimed by the plaintiffs. The land claimed by the plaintiffs is represented on the large official map, filed in evidence (Exhibit Donahoo No. 1) as a quadrilateral tract bounded on the Southwest by line "1-81A-5B", on the Southeast by "5B-14B", on the Northeast by "14B-43B", and on the Northwest by "43B-43A-40-34A-1." Plaintiffs claim that the last mentioned line was the true and correct back line of the Slaughter six hundred

acre patent, and that their back line is co-extensive with said Slaughter line. This leaves an area of 97.7 acres demanded in plaintiffs' declaration. Plaintiffs claim that their title deeds called for a cherry tree at "8A" on the map, and running thence with the George Washington patent line (through points "5B" and "81A") to an oak and ash corner at "1", and thence to two elms on the bank of Tyler Creek, at the Eastern extremity of their back line, at point "43B", at what is known as the "Deep Hole" corner. The vital points in controversy are the establishment of the aforesaid corners and the Slaughter lines as located by plaintiffs, to which their evidence is directed. Now, turning to the defense made by Caldwell. George Wilson died, leaving two sons, one Alnitia. Wilson and the other John Wilson, Sr. The plaintiffs, as we have seen, claim under Alnitia Wilson, and the defendant under John Wilson, Sr. The title does not go back to a common source. John Wilson's father, namely George Wilson, and one John Wright received a patent from the Commonwealth in 1837 for 167 acres of land, of which John Wright sold to John Wilson Sr., 100 acres. The defendant, Caldwell, claims his title under John Wilson, Sr., who died intestate, leaving as his heirs his widow, Letha Wilson, and his sons, Edward and John Jr. · Edward Wilson died intestate, leaving as his heirs his widow, Callie Wilson, and an infant daughter, Clella. In a chancery cause instituted by his heirs, the lands of John Wilson, Sr., were divided and certain deeds made. After W. G. Creighton, county surveyor, made his report in said chancery cause, another suit was immediately instituted, in chancery, by John Wilson, Jr., setting up the fact that the said surveyor had overlooked 34 acres, the same being the land Southeast of line "1-43B", as shown on the official map in the instant case, and Northwest of the parallel line "81A-101", on said map. This entire strip of land lies within the boundary claimed in plaintffs' declaration. Plaintiffs' ownership thereof is dependent, however, upon the establishment of their Northwestern line at "1-43A." This is the essence of this litigation. This 34-acre tract was divided by said surveyor into three tracts, the one on the Western end containing 17.94 acres, this being the tract claimed by

the defendant in the instant case, and designated on the official map as being bounded on the Northeast by line "34A to Stake (91 plus 125)", on the Southeast by "Stake to 81A", on the Southwest by line "18A-1" and on the Northwest by "1-34A", this last mentioned line being on the Slaughter line. The remainder of the 34 acres to the Northeast, was laid off in lots containing 10.6 and 6.4 acres, respectively, and bounded by line "34A-43B" on the Northwest, "43B-101" on the Northeast, "101 to Stake (91 plus 125)" on the Southeast, and by "Stake to 34B" on the Southwest. The 10.6-acre tract, lying next to that claimed by defendant in this action, was sold by defendant to one Fischer, and the remaining one to John Wilson, Jr. The defendant, Caldwell, obtained his deed from Elmer E. Stone, Special Commissioner, in said chancery suit, on the 23rd day of April, 1923. This tract lies wholly within the boundary of the land claimed by the plaintiffs. The defendant contends that line "1-43", on the plat is not the true Northern boundary of the plaintiffs' land, but that the true Northern boundary thereof is represented by line "81A-101", on said plat; that the oak and ash corner, in the Washington patent line, claimed by the plaintiffs to be located at "1", is in fact located in said line at "81A"; and that the "cherry tree corner" located at "8A" by the plaintiffs, is at low-water mark on the Kanawha River, at "79" on said plat. Plaintiffs admit the derivation of the defendant's title, as having for its source the Wilson-Wright patent of 1837, for the 167 acres of land, but contend that no part of the land embraced in said patent extends below the said Slaughter line, as defined by them.

The plea of the statute of limitations, and the plea of not guilty were interposed; and on the issues presented by these two pleas the parties went to trial, before the jury empanneled to try them. In ejectment the plea of not guilty puts in issue the right and title of the plaintiffs to all the lands sued for. *N. & W. Ry. Co.* v. *Christian,* 83 W. Va. 701; *Wilson* v. *Braden,* 48 W. Va. 196. By thus appearing and pleading to the declaration through a general denial, the defendant admitted for the purposes of the action his possession of the property. By this attitude the defendant gave no notice

of an intention to claim only a part. From the statement of the case it is apparent that the defendant's claim went only to 17 acres of 97.7 acres claimed by the plaintiffs. Yet, under the authorities, the entire trial proceeded on the theory of the defendant's claim to the whole boundary set out in plaintiffs' declaration. At the conclusion of the trial, after both parties had announced that they had rested, the following statement was read to the jury by counsel for the defendant:

> "The defendant, Caldwell, disclaims and says that he has no interest in, nor does he claim any interest or title to, any of the following land: Any portion included in the plaintiffs' declaration south of the line indicated on Donahoo's map by the figures 81-A to 101; nor does he have any interest in, or title to, nor does he claim any interest in, or title to, the part covered by the deed of C. M. Caldwell and wife to Al Fisher and others, as introduced in evidence in this case as one of the defendant's exhibits. Neither has he any title to, nor interest in, neither does he claim any title to, nor interest in, the 6 acres covered by the decree of John Wilson, junior, filed as an exhibit in this case, the said Wilson and Fisher tracts being the last two described, both being part of the strip in controversy, and lying north of line running from Figure 81-A to figure 101 on the Donahoo official map."

Under our practice, where the defendant makes no claim as to part of the land sued for, but does assert ownership in the balance, if he would limit the issue and avoid error in the general verdict, he should by disclaimer filed in due time disclaim all the land beyond the line or lines to which he claims. *N. & W. Ry. Co.* v. *Christian, supra.* This disclaimer should be entered at the commencement rather than at the conclusion of the litigation. 19 C. J. 1121; *Thompson* v. *Camper,* 106 Va. 315. Notwithstanding this general rule of practice, a defendant may at any time before verdict, by leave of the Court, withdraw his plea of not guilty and put in his disclaimer to the whole or a part of the land sued for and be relieved of the costs thereafter incurred respecting the land disclaimed. *Wilson* v. *McCoy,* 93 W. Va. 667; *Wright*

v. *Johnson,* 108 Va. 856. The plea of not guilty was not withdrawn and the defendant went to the jury in the anomalous position under this plea of laying claim to all the land in controversy notwithstanding the attempted disclaimer as to part. By a proper disclaimer at the proper time the issue could have been reduced to a narrow one—whether the Northern line of plaintiffs' land was that extending from "1" to "43A" or whether it was another line parallel thereto of "81A-101", as claimed by the defendant. But this was not done. The sufficiency of the purported disclaimer is challenged by the plaintiffs, on the authority of the *Wilson* v. *McCoy case, supra.* It was there held that the disclaimer should be made with reference to an official map and be something definite upon the record on which the court might give judgment. The usual practice is to have the disclaimer entered on the record by an order of the Court. *Tolley* v. *Pease,* 72 W. Va. 322. Aside from the irregularity as to the manner and time of filing, is the disclaimer sufficiently definite in its terms? Had the disclaimer been limited to all the land to the South of line "81A-101", as appearing on Donahoo's map, it would seem to have been sufficiently definite. But it attempted to go farther and disclaim title to and interest in lands of others, not parties to the action, by reference only to deeds filed as exhibits in the case. It would seem that it fails to meet the requirements of the rule announced in *Wilson* v. *McCoy, supra,* that "there must be something definite upon the record on which the court might give judgment." The case on this state of the pleadings went to the jury. A verdict was returned for the defendant. The Court entered a general judgment upon the verdict that the plaintiff take nothing by his suit. This action of the court is assigned as error. Treating the disclaimer as properly entered, what should the verdict and the judgment have been? The jury should have located the true Northwestern line of the plaintiff's land. This was the important fact in issue. *Croston* v. *McVicar,* 76 W. Va. 461. Code, Ch. 90, sec. 25, provides that when the right of the plaintiff is proved to only a part or share of the premises, the verdict shall specify such part particularly as the same is proved, and with the same certainty

of description as is required in the declaration. In *Miller* v. *Holt,* 47 W. Va. 7, it is held where the real controversy was the location of a division line the verdict of the jury must find the true location. In *Wilson* v. *McCoy, supra,* where there was a disclaimer, and the jury found for the defendant, the court said: ''The verdict of the jury should have been definite. If they intended to locate the line as claimed by defendants, after defendants' disclaimer, they should have found for plaintiffs the land disclaimed, describing it with certainty with reference to title papers or maps and surveys in evidence, and then have found for defendants the land not disclaimed, describing it with the same certainty as would be required in a declaration in ejectment. *Pardee* v. *Johnston,* 70 W. Va. 347, and cases cited.'' A failure to do this was there held to constitute reversible error. The court further said: ''A general verdict and judgment thereon is·thereafter conclusive between the parties and their privies in estate.'' Counsel for defendant in error cite *Tolley* v. *Pease, supra,* as sustaining the verdict and judgment in the instant case. In that case the disclaimer was filed by order of the court before the jury was sworn. While the verdict of the jury was for the defendant the court entered a judgment establishing the true division line. The Court there said: ''The jury found a verdict simply for defendants, but in view of the disclaimer, that verdict virtually said that the line M. to E. was the true division line. The judgment entered on the verdict, recognizing that line as the true one between the parties is not erroneous, as plaintiffs insist, because the verdict did not designate the line directly.'' This holding, in our view, accentuates the doctrine announced in the *Wilson* v. *McCoy case, supra,* which is controlling here.

Other assignments of error relate to the instructions given to the jury on behalf of the defendant. Instruction No. 1. ''The Court instructs the jury that wherever a deed, patent or survey in this suit calls for a line running with the meanders of the river or binding thereon or up the river to some other point on the river bank, the same is binding upon the parties to this suit with reference to the date of said deed, patent or survey as said river was then located and if the courses

and distances of any surveys or patents introduced in evidence in this case vary from the location of said river or river bank as the same was located at the date of said survey or patent as called for in said patent and surveys, the Court then instructs you that the location of said river or river bank called for therein prevail over the courses and distances." The basic and governing calls are for a line along the Kanawha River, found in the Slaughter patent and the deed from Slaughter to Baxter. The contention of the defendant is that the Southeast corner of the Baxter tract is on the river bank, because the deed calls for a line running up the river with its meanders and binding thereon to three sugar trees on the bank. The plaintiff introduced evidence tending to prove that the corner called for as the "three sugar trees" is not on the river bank, but is located about twenty poles therefrom. A line also called for in the deed on which the plaintiff relies, is described as running from a cherry tree and a spanish oak on the bank of a river and thence up with its meanders binding thereon to said three sugar trees. Evidence was likewise put in the record by the plaintiff tending to locate the cherry tree at a point some distance from the river. While in such case the line may be described as being a straight line running from point to point, the deed is to be interpreted as carrying by construction, such small parts of land as lie between the line and low water mark, the descriptive line being separable and distinguishable from the operative scope of the deed. *Clayton* v. *County Court,* 58 W. Va. 253; *Brown Oil Co.* v. *Caldwell,* 35 W. Va. 95. The true rule is stated in Farnum on Water and Water Rights, Sec. 420: "If a stream is made the boundary of a grant, the boundary will follow the course of the stream in its meanderings; and the fact that lines are attempted to be run along the bank which do not, in fact, correspond with the course of the stream, is immaterial—at least where the corners of the courses designated are not specified." See *French* v. *Bankhead,* 11 Grat. 156. The plaintiffs have attempted to bring themselves within the exception noted in the foregoing rule —where the corners of the courses designated are specified. Whether they have established the location of said corners at

the points claimed by them is a question for the jury. Instruction No. 3 is objectionable for like reasons.

Instruction No. 8, objected to by the plaintiffs, was evidently given under authority of *Pennington* v. *Underwood,* 59 W. Va. 340. However, the facts are different here. In that case the plaintiff did not show a paper title running back to the Commonwealth, but sought to establish his claim to the premises in question by possession in himself and those under whom he claimed for the statutory period, under color of title. In the instant case the plaintiffs rely upon a title extending back to the Commonwealth. The question at issue, however, is do their title papers cover the identical land claimed by the defendant, and which is in controversy in this suit? This is for the jury. The plaintiffs are right in their contention that this instruction is erroneous if their prima facie title embraces the land in controversy and the defense is solely adverse possession. In such case the burden of proof is shifted to the defendant. 19 C. J. 1152; *Stonestreet* v. *Doyle,* 75 Va. 356; *Parkersburg Industrial Co.* v. *Schultz,* 43 W. Va. 470; *White* v. *Ward,* 35 W. Va. 418; *Hall* v. *Hall,* 27 W. Va. 468. But the application of the latter doctrine to the instant case depends upon questions of fact to be determined by the jury. The rule is that an instruction which purports to apply to the entire case should be predicated upon all the material facts, which the evidence proves or tends to prove. *Higgins* v. *Whitmore,* 116 Va. 414.

Instruction No. 20 is misleading. While it is true that the description in deeds cannot be extended by reference to a patent or other paper not referred to or adopted for description in the deeds themselves, they may as documentary evidence, have a vital and decisive bearing upon the location of monuments and boundaries controverted in an action of ejectment. A strict interpretation of the language of this instruction would have excluded from the consideration of the jury the Slaughter patent and the Bullit survey, introduced and admitted as evidence in the case, tending to locate the boundaries of the lands in dispute.

We do not deem it necessary to consider further the instructions. The issue on the next trial, by a disclaimer, will

be reduced to a narrow one, and many of the instructions based on the evidence here, may not apply to the case made on a re-trial.

For the foregoing reasons the judgment will be reversed, the verdict set aside, and the plaintiffs awarded a new trial.

*Reversed and remanded.*