FRANK BURDETTE *v.* RUSSELL M. CAMPBELL

(No. 9535)

Submitted January 18, 1944. Decided March 7, 1944.

KENNA, JUDGE, dissenting.

*G. G. Duff* and *A. N. Breckinridge,* for plaintiff in error.
*Wolverton & Callaghan,* for defendant in error.

LOVINS, JUDGE:

This action of ejectment comes to this Court on writ of error from the Circuit Court of Nicholas County. Frank Burdette is plaintiff and Russell M. Campbell and Laura B. Campbell, his wife, are defendants, and hereinafter will be referred to as "plaintiff" and "defendants", respectively. The jury returned a verdict for defendants, on which the trial court entered judgment, to which judgment this Court awarded a writ of error limited to questions involving a disclaimer filed by defendants, the form of the verdict and the judgment rendered thereon. The limited nature of the writ renders a complete factual statement unnecessary.

Plaintiff and defendants derive their respective titles from Martin Hill, who died intestate prior to January 25, 1902, seised of a two hundred and twenty-acre tract of land situate near the junction of Peters and Line Creeks in Nicholas County. Plaintiff owns two tracts of land, part of the two hundred and twenty-acre tract, one of which

is situate near the confluence of the two creeks above mentioned and is not involved in this litigation. The other tract is situate on Peters Creek a short distance upstream from the first tract, and contains approximately twelve acres. Defendants own a tract of land of approximately 10.69 acres, likewise a portion of the two hundred and twenty-acre tract above mentioned, which is contiguous to plaintiff's twelve-acre tract.

This litigation relates to the true location of a line extending from a rock and water birch on the south bank of Peters Creek to a point on the south side of the Weston and Gauley Bridge Turnpike, where a gate was formerly located. Plaintiff contends that the true line extends from a point marked "10" on the trial map N. 20° 30′ E. 909 feet to point "1", marked thereon. Defendants contend that said line extends from a point marked "A" on the trial map N. 22° 21′ E. 835 feet to a point marked "B1" thereon, or that such line extends from point "A" above mentioned N. 23° 30′ E. 808.5 feet to point "B", as marked on said map. Point "10" is approximately 162 feet west or downstream from point "A", and point "1" is approximately 215 feet west of point "B1" and approximately 233 feet west of point "B". It is clear that the determination of this action depends upon the true location of the termini of the different lines claimed by plaintiff and defendants.

Frequent reference is made in the testimony to a fence extending from the creek to the turnpike, which is apparently located on or near one of the lines claimed by defendants. It is not entirely clear whether the fence is now standing, or whether its location may be discerned.

The foregoing suffices to furnish a factual background for statement of the procedural aspects of this action, to which this writ of error is limited.

Plaintiff's declaration, accompanied by a notice, was served on the defendants on August 3, 1933, and was filed in the office of the Clerk of the Circuit Court of Nicholas County on September 4, 1933. The land claimed in the

594

declaration is described by exterior boundary lines as containing twelve acres, more or less, being the entire area of that particular tract of land. The action remained quiescent until May 26, 1941, at which time a *nunc pro tunc* order of survey was entered as of May 20, 1941. Defendants filed their plea of general issue, a disclaimer and a petition for an allowance for improvements on September 4, 1942, the determination of defendants' claim for improvements being deferred until after the verdict of the jury on the title. Defendants disclaimed all land lying east of the line fence, which they assert marked the division line between their land and plaintiff's land, and set forth the following variant descriptions of the line: (a) " 'a stake on same side of turnpike, near a gate; thence S. 21 1/2 W. 46 po. to a Water Birch on bank of Peters Creek on line of 600 acre survey' "; (b) " 'a rock and water birch, corner of R. M. Campbell; thence with said Campbell N 18 1/2 E 49 poles to the beginning'—the beginning being described as 'a stake on the south side of the old Weston and Gauley Bridge Road, at a gate, corner to R. M. Campbell and the Heirs of Emily Hill, deceased' "; (c) " 'a water birch on the south bank of said (Peters') Creek, corner to the lands of the party of the first part, aforesaid; thence with the line of the said J. R. Hill, across the creek and bottom and with the division fence as it now stands to the beginning'—the beginning being described as 'a stake on the south side of the Turnpike Road, near a gate, corner to tract now owned and occupied by the aforesaid Joseph R. Hill.' " A trial map, documentary exhibits, and oral testimony were introduced, the latter being in sharp conflict. The jury returned a general verdict for defendants and against plaintiff. The trial court overruled a motion to set aside the verdict, entered judgment that plaintiff take nothing by his action and that defendants recover costs.

Plaintiff relies on six errors, which, in view of the limited nature of the writ of error awarded herein, may be summarized as follows: (1) That the disclaimer should

not have been filed until the plea of not guilty was withdrawn; that the disclaimer is inconsistent with such plea; and that the disclaimer filed by the defendants is vague; (2) that the verdict is insufficient basis for the judgment pronounced thereon; (3) that the verdict found for the defendants as to all the land described in the plaintiff's declaration, notwithstanding defendants' attempted disclaimer; and (4) that plaintiff is entitled to recover costs accrued from the time the disclaimer was filed.

Defendants interposed a two-fold defense: first, that the division line between plaintiff's land and their land is properly located at the fence hereinabove mentioned, and, second, that their title to the disputed land rests on adverse possession for the statutory period.

A defendant in an action of ejectment may challenge the sufficiency of a declaration by a demurrer, but is limited to pleading the general issue of not guilty in bar of the action. Code, 55-4-10; *Johnston* v. *Griswold and Rodgers*, 8 W. Va. 240; *Russell* v. *Lavender*, 112 W. Va. 531, 166 S. E. 1. We are mindful of the expressions of this Court in the case of *Zirkle* v. *Moore, Keppel & Co.*, 110 W. Va. 535, 158 S. E. 785, which apparently impinge on the above statement, but we do not regard them as altering the rule established by legislative enactment and the decisions of this Court. A disclaimer is not a plea, but a formal refusal by the defendant to join issue as to all or part of the land claimed by plaintiff. *Pardee* v. *Johnston*, 70 W. Va. 347, 355, 74 S. E. 721.

A defendant in an action of ejectment to avoid the expense of litigation relative to land to which he makes no claim may by formal deed or entry of record disclaim any interest therein, and thus be relieved from such expense; or, if a part of the land claimed by the plaintiff in his declaration is likewise claimed by the defendant, defendant may disclaim that part in which he has no interest, and plead not guilty as to the residue. *Wilson* v. *Caldwell*, 98 W. Va. 661, 666, 127 S. E. 497; *Wilson* v. *McCoy*, 93 W. Va. 667, 671, 117 S. E. 473. See also *Norfolk*

& W. Railway Co. v. Christian, 83 W. Va. 701, 99 S. E. 13; Fisher's Heirs v. Camp's Heirs, 26 W. Va. 576.

When title to all or any part of land is to be disclaimed, it is the better practice to do so at the commencement of the litigation. Wilson v. Caldwell, supra. But by leave of court a plea of the general issue may be withdrawn before verdict, and all or any part of the land in controversy disclaimed. Wilson v. Caldwell, supra; Wilson v. McCoy, supra; Fisher v. Camp, supra. In one instance a disclaimer was permitted after verdict. Jones et al. v. C. & O. R. R. Co., 14 W. Va. 514. Generally, the plea of not guilty and a disclaimer are offered simultaneously, as was done here. We see no objection to disclaiming at the time of pleading the general issue, but the disclaimer should describe the land disclaimed with certainty. As hereinabove stated, the disclaimer in this case was uncertain in that the land lying east of the line fence was disclaimed, and then the fence was described as being located on a line having three more or less varying descriptions appearing in three deeds. Defendants should have disclaimed all land lying east of the fence, or east of one of the three lines set forth in their disclaimer. Having regard to the necessity for certainty in fixing the location of disputed lines between the lands of parties to an action in ejectment, the variant locations of the line fence contained in the defendants' disclaimer render it vague and uncertain, and give rise to the error to be presently discussed.

If a line appearing on a trial map is designated with certainty in a disclaimer as the line to which defendant disclaims, reference may be had to such map to supplement and render certain the location of such line. Tolley v. Pease, 72 W. Va. 321, 78 S. E. 111; Boggs v. Morrison, 102 W. Va. 240, 250, 135 S. E. 230. But where, as here, the exact location of a division line is uncertain, by reason of the diverse descriptions hereinabove mentioned, the pertinent rule announced in Wilson v. McCoy, supra, is applicable.

Title of plaintiff to a portion of the twelve-acre tract is not disputed by defendants, and it is clear from the evidence that plaintiff is entitled to hold an undefined east portion thereof.

Plaintiff herein demanded a twelve-acre tract described in the declaration with particularity. Defendants claimed an indefinite part thereof. Nevertheless, the jury by its verdict, in effect, says that the plaintiff is not entitled to any of the land demanded, and the judgment approving that verdict says that the plaintiff shall take nothing by his action. Strictly speaking, the verdict and judgment gave the defendants more than they claimed. The jury by its verdict should have fixed the true location of the division line between plaintiff's and defendants' lands. *Croston* v. *McVicker,* 76 W. Va. 461, 85 S. E. 710; *Miller* v. *Holt,* 47 W. Va. 7, 34 S. E. 956. If the jury intended to fix the fence as the true division line between the lands of the plaintiff and defendants, thereby resolving the issue in favor of defendants and denying to plaintiff part of the land claimed by him, the division line should have been located and described in the verdict, and a general verdict should not have been received. *Wilson* v. *Caldwell, supra,* pt. 3 syl.

The disclaimer is indefinite and uncertain; the verdict of the jury inconclusive; and the judgment of the court entered thereon is unsupported by the necessary finding of fact. The trial court erred in overruling the motion to set aside the verdict, and in entering judgment thereon.

The contention of the plaintiff with reference to costs is not well taken. There is a distinction as to costs in equity causes and actions at law. In equity the allowance of costs lies in the discretion of the trial chancellor, and such allowance will not be disturbed unless the discretion is abused. *Lay* v. *Phillips,* 116 W. Va. 60, 178 S. E. 523; *York* v. *Meek,* 96 W. Va. 427, 123 S. E. 225; *Hannah* v. *Lumber Co.,* 92 W. Va. 104, 114 S. E. 506; Code, 59-2-11. At law costs are the creature of statute, costs as such being unknown at common law. *Hannah* v. *Lumber Co.,*

*supra; West Virginia Cent. Gas Co.* v. *Holt,* 66 W. Va. 516, 617, 66 S. E. 717; *Bice* v. *Telephone Co.,* 62 W. Va. 521, 524, 59 S. E. 501; *West* v. *Ferguson,* 16 Gratt. 270. Costs of a law action in the trial court are awarded to the party for whom final judgment is given. Code, 59-2-8. See *Hicks* v. *Coal Co.,* 95 W. Va. 17, 32, pt. 7 syl., 120 S. E. 898. A disclaimer grows out of practice, and we find no statutory authority for its use. It is difficult to see where the filing of a disclaimer, the authority for which exists only in the general approval thereof by this and the trial courts of this jurisdiction, would give to either party the right to costs, contrary to legislative enactment, which provides that "the party for whom final judgment is given" shall recover his or their costs.

Recovery of costs on this writ of error presents a different question. The party substantially prevailing in this Court is entitled to costs. Code, 59-2-11. Accordingly, the plaintiff is entitled to costs incurred on this writ of error. The costs incurred in the trial court shall abide the final result.

Consonant with what we have said herein, the judgment of the Circuit Court of Nicholas County is reversed, the verdict of the jury is set aside, and a new trial awarded to the plaintiff.

> *Judgment reversed; verdict set aside; new trial awarded.*

KENNA, JUDGE, dissenting:

In my opinion the conclusion of the majority has complicated what is at best a highly confusing controversy. As the majority opinion states, this writ of error was limited to questions involving the disclaimer, and the form of the verdict and the judgment. The plaintiff in error correctly prosecuted it on that basis without presenting the matters that arose on the defendants' plea of not guilty. His opponents did likewise. I believe the majority has reached a conclusion based upon the entire case while considering

only that part of the record that relates to the limited writ of error granted by this Court.

As the majority opinion states, a disclaimer is not a plea, and consequently must, when used, accompany a plea necessary to prevent a default judgment. The only plea in bar in ejectment is "not guilty". One would think that a disclaimer which preceded a plea of "not guilty" would eliminate the land renounced from that embraced within the issues formed by the plea, and that if the plea of "not guilty" came first the issue would be made up so as to include all the land described in the declaration, and the disclaimer which followed, permissible though inconsistent, although it would serve to limit the defendants' claimed boundary, would not technically affect the issues already joined. See Warrelle Ejectment, Section 211, page 216. However, we are not here concerned with that rather fine-spun distinction. We must not lose sight of the fact that a disclaimer operates only upon the boundary that the plaintiff may *prima facie* show himself entitled to recover. If the plaintiff, in the minds of the jury, has failed to show title to the entire boundary described in his declaration, there is nothing upon which the disclaimer can operate, and no reason why the defendants should attempt to show title to any part of the main boundary. No judgment can be entered which would affect it. *Jones* v. *C. & O. R. R. Co.*, 14 W. Va. 514, 524.

Clearly there are two different verdicts for defendants that could have been found upon the state of this record:

First: A special verdict that the controverted line was located upon the ground as described in their disclaimer. This form of verdict was not returned. This aspect has been fully covered by the Court's opinion, following the principle announced in *Wilson* v. *Caldwell*, 98 W. Va. 661, 127 S. E. 497, the third syllabus of which, if read in the abstract, unsoundly ignores the holding of this Court in *Ida Hicks* v. *New River Coal Co.*, 95 W. Va.

17, 120 S. E. 898, *Miller* v. *Holt*, 47 W. Va. 7, 34 S. E. 956, and other cases.

Second: A general verdict for the defendants based upon the plaintiff's failure to locate the description contained in his declaration upon the ground according to 'the holdings of this Court in the *Hicks* and *Miller* cases just cited. This form of verdict was returned.

But going back to the disclaimer filed by the Campbells in this action, I cannot agree with the statement of the majority opinion that it sets forth three variant descriptions of the line in controversy, although it is not an aptly drawn paper. Defendants claimed title to all land described in the declaration that lay west of a certain old fence and referred to three descriptions of the same line in their disclaimer. It reads as follows:

"And the said defendants, Russell M. Campbell and Laura Campbell, his wife, in their own proper persons come and disclaim all right, title, interest and possession in and to any part of the lands and premises mentioned and described in the plaintiff's declaration that lies east of a certain old line fence which separates the plaintiff's from the defendants' land, which said fence has marked the division line between the lands of the parties hereto and their predecessors in title for approximately forty *hears,* the said fence being the plaintiff's western boundary line and the defendants' eastern boundary line, and which said line fence can be more specifically identified by certain large, old, seedling apple trees which have grown along said fence row, and by the old private Matilda D. Hill — Joseph R. Hill — Frank Burdett road along the east side of said old line fence, the same being described in pertinent deeds as follows:

"1. Deed from Matilda D. Hill and Joseph R. Hill (a common source of title — predecessors in title of both plaintiff and defendants) to Emily Hill (defendants' predecessor in title), dated Sept. 1, 1889, recorded in Deed Book 33, page _____, conveying 3 1/2 acres:

" 'a stake on same side of turnpike, near a gate; thence S. 21 1/2 W. 46 po. to a Water Birch on bank of Peters Creek on line of 600 acre survey.'

"2. Deed from the same Joseph R. Hill and others to the plaintiff Frank Burdett, dated Sept. 25, 1922, and recorded in Deed Book _____, page _____, conveying 12 acres 'of which the late Matilda D. Hill died seized':

" 'a rock and water birch, corner of R. M. Campbell; thence with said Campbell N 18 1/2 E 49 poles to the beginning' — the beginning being described as 'a stake on the south side of the Old Weston and Gauley Bridge Road, at a gate, corner to R. M. Campbell and the Heirs of Emily Hill, deceased.'

"3. Deed from the same Joseph R. Hill (predecessor of defendants in title to a one-ninth interest in defendants' land as one of nine heirs of Emily Hill) to Henry C. Hill, dated Jan. 31, 1916, and recorded in Deed Book 60, page 194, conveying said interest:

" 'a water birch on the south bank of said (Peters') Creek, a corner to the lands of the party of the first part, aforesaid; thence with the line of the said J. R. Hill, across the creek and bottom and with the division fence as it now stands to the beginning' — the beginning being described as 'a stake on the south side of the Turnpike Road, near a gate, corner to tract now owned and occupied by the aforesaid Joseph R. Hill.'

"But defendants claim the land west of the aforesaid boundary, as to which they do not disclaim."

It will be noticed that the second description of the line in controversy in the disclaimer refers to the same deed under which the plaintiff, Frank Burdette, claims title, and describes that line in the language of this deed as being "a rock and water birch, corner of R. M. Campbell; thence with said Campbell N 18 1/2 E 49 poles to the beginning", and quotes that deed further as describing the beginning as "a stake on the south side of the Old

Weston and Gauley Bridge Road, at a gate, corner to R. M. Campbell and the Heirs of Emily Hill, deceased." The three alternate descriptions of the line in controversy contained in the disclaimer, there being no objection to it or its form, with one of them being exactly the description of the line in controversy upon which the plaintiff is bound to rely, it being the description contained in his deed and in his declaration, I do not see how the disclaimer can be held bad as lacking an accurate description of the land disclaimed while the other two papers are held good.

To my mind, this controversy turns upon locating on the land a paper description of a boundary line, the accuracy of the paper description being admitted by both litigants. Consequently, I believe that the disclaimer in this matter was good as a description of the land to which title was renounced, if the description contained in the plaintiff's deed and in his declaration would be sufficient to convey title if contained in a deed, which I believe is the proper test of the sufficiency of the description of land required in a declaration in the action of ejectment. If plaintiff located the land he claimed by the description contained in his declaration, it necessarily follows that he established the fact that the land disclaimed was sufficiently described.

But did the plaintiff locate the land described in his declaration? We must not lose sight of the fact that in the action of ejectment recovery is based upon the strength of the plaintiff's title, not the weakness of his adversary's. That question was submitted to this jury with several instructions of the trial court which we will speak of later. The trial court, I think, took a very liberal attitude toward the plaintiff, treating the location in controversy as being a jury question. In my opinion the plaintiff had not introduced sufficient proof to entitle him to go to the jury, that being his affirmative duty, to be discharged, I believe, before the defendants' disclaimer became operative. In order to refer to the parts

of this somewhat bulky record which I believe justify that statement, it will be necessary to go into some rather tiresomely dry detail.

An order of survey in extremely broad and liberal terms was entered on May 26, 1941, appointing the county engineer "to do such surveying as either party may require". Pursuant to this order he made what is called an "official map", which was used by the plaintiff as the sole vehicle for proving to the satisfaction of the jury that he was entitled to recover the land described in his declaration.

Ignoring the question of its admissibility, the following is a random example of the method pursued by the plaintiff as locating upon the ground the description contained in his deed as represented by the "official map", picturing a survey made pursuant to the Court's order. In his examination in chief the court surveyor in response to the following questions gave the following answers:

"Q. At that point did anyone identify that or point it out to you as where the water birch had stood?

"Objection as leading; overruled; exception.

"A. Frank Burdette pointed that out as his corner when the surveying was done at that date.

"Q. Did any one at any other time point out the same place as being the water birch and rock called for in that deed?

"A. They did.

"Q. Who were they?

"A. Ed Ford, Burl Cavendish, and Ronnie Summers."

As to the rock and water birch corner called for in the description, Ed Ford, the first person, excepting the plaintiff whose testimony was merely general, referred to by the surveyor as pointing it out to him, had this to say:

"Mr. Breckinridge:  Q.  What year was it that you bought the land from Joe Hill?

"A.  It was in the latter part of '22, or first part of '22.  I don't just remember.

"Q.  Now then, at the time you bought this land, what corners did Joseph R. Hill show you as being corners to the land which you bought?

"A.  Well, we went across Peters Creek and walked up the old railroad to the upper corner.  It was a rock on the south side of Peters Creek.

"Q.  You say it was a rock.  Do you know what the call was in the deed?  Was it a rock alone, or was there a water birch and rock?

"A.  No, it was a rock."

Burl Cavendish, another witness who pointed out the corner in question to the surveyor, had this to say:

"Q.  Do you know anything about the water birch claimed as a corner to the Burdette land?

"A.  Yes, I know there was a water birch stood across the creek, that washed out, but as to a corner I don't know whether it was a corner or line or what it was."

Ronnie Summers, another witness who pointed out the corner to the surveyor who made the trial map, in reply to a question concerning it, had this to say:

"A.  Well, how he showed it to me, I was a night watchman on a mill.  That tree was right against it, almost against the mill, the saw-carriage, and they threw strips and slabs against Bob's bank in order to keep the creek from cutting in, and he told me to not put none against this tree on account it would make a danger of fire; it was a corner tree or a pointer for a corner tree, and I ain't certain which."

,Upon being cross-examined concerning the method followed in adopting, the location as shown .upon the map, which was the only one introduced in evidence, the surveyor had this to say:

"Mr. Callaghan: Q. Now, Mr. Rader, you mentioned about starting at a fence-post that was in the line-fence at point No. 2 at the request of Frank Burdette, and at a point which he claimed was a corner.

"A. Point number what? Two?

"Q. Four.

"A. Yes, that is the fence-post.

"Q. And then you surveyed along the line-fence between them in a general southerly direction down to point No. 5.

"A. I did.

"Q. How much did you have to overrun that distance as called for in the deed to get across Peters Creek and to the rock on the south side?

"A. We had to overrun something like three or four poles."

and this:

"Q. Now, as I understand you, even though your distance has been exhausted under the deed, yet you continued across the creek for some distance until you came to a cliff or a rock that you felt was the corner called for in the deed?

"A. I did.

"Q. Then you surveyed down to the south side of Peters Creek, a general westerly direction, to points numbers 6, 7, 8 and 9, and found no corners of any kind, did you?

"A.   Didn't find nothing.

and this:

"Q.   Now, as I understand then, at point 10 you didn't find the water birch, but at that point Burdette pointed out a snag and this flat rock that was lying on top of the sand or slush there.  Where was that in connection with where your distance ran out?

"A.   It was right at it.

\* \* \*

"Q.   Now, you had to extend that line beyond the distance called for in the deed in order to reach the south bank of the roadway?

"A.   I did.

"Q.   What is the distance called for in the deed for that line?

"A.   Where is the deed?  North 18 1/2 east, 49 poles to the beginning.

"Q.   Will you take your scale and mark an X in red ink on that boundary line between 10 and 1 where your distance ran out in accordance with the call in the deed?
" (Witness marks on map as requested).

"Q.   Now, as I understand, in accordance with the Burdette deed with which you were running, the deed called for 49 poles or 808 1/2 feet from point 10 to point 1, but those 808 1/2 feet ran out at point X which you have now marked on that line?

"A.   Yes.

"Q.   And you had to extend the line 101 feet farther in order to reach the south bank of the roadway?

"A.   Yes."

Where corners and markers are lost, bearing and distance control.

Although the motion of defendants for a directed verdict was overruled, as showing beyond doubt that plaintiff's factual proof of title (survey) was regarded by the trial judge as being in doubt the following instruction will illustrate:

. "The court instructs the jury that *were* a plaintiff in an action of ejectment claims, as in this case, that the land in controversy lies within the boundaries of the deeds under which he claims, then the burden is on the plaintiff to prove by a preponderance of all the evidence that the land in controversy is included within the outside boundaries of the deeds under which he claims, and if the jury believe from the evidence that this burden has not been sustained by the plaintiff in this case, you must find a verdict for the defendants."

To my mind the foregoing questions and answers which form the basis of plaintiff's case are, certainly after the verdict of the jury, conclusive upon the fact that he failed to establish on the ground the salient corners of the land described in his declaration. It is, of course, axiomatic that a description containing one line which cannot be located or a survey which does not "close", fails entirely as a means of passing title, because in a boundary there can be no opening.

Believing that the verdict for the defendants should not be set aside, I would affirm the judgment below.